(Decided 5th December, 1870.)

---

## The Philadelphia, Wilmington & Baltimore R. R. Company *vs.* Robert Kerr, *et al.*

### Collision of Vessels—Duties of Steamers and Sailing Vessels.

Whenever a sailing vessel and a steamer are proceeding in such directions as to involve risk of collision, it is the duty of the steamer to keep out of the way of the sailing vessel, and of the sailing vessel to hold her course.

This rule is a general one not depending on the length of route of the steamer, or whether it be up, or down, or across, a navigable stream; and it applies to the case of a steamer transporting a train of cars with passengers, across a river at a railway connection.

There may be dangers and difficulties which will excuse the violation of the rule, and then it will be left to the jury to determine if any surrounding circumstances existed to justify a departure from it.

If the sailing vessel conform to the rule and keep her course, she is not guilty of want of ordinary care, or contributory negligence, even when she might possibly have avoided a collision by casting anchor, or turning her course.

Philadelphia, Wilmington and Baltimore R. R. Co. *vs.* Kerr, *et al.*

It is the duty of steam vessels navigating waters, where sailing vessels are often met with, to keep a trustworthy and constant lookout besides the helmsman.

APPEAL from the Superior Court of Baltimore City.

The facts are given in the opinion of the Court.

*Exception:* The defendant offered the following prayers:

1st. That the plaintiffs cannot recover in this case, if the jury shall find from the evidence in the cause, that there was want of ordinary care on the part of the plaintiffs, which contributed to the collision, even if the jury shall find from the evidence that there was fault also on the part of the defendant.

2d. That even if the jury shall find from the evidence, that there was no negligence on the part of the canal boat, then, in order to enable them to find in favor of the plaintiffs, they must be satisfied from the evidence in the cause, that there was want of ordinary care on the part of the defendant, in failing to exercise such care and diligence as the defendant had the means and power to employ, having regard to the business in which the defendant was engaged.

The Court rejected these prayers, and gave the following instruction to the jury:

If the jury shall find from the evidence, that the collision complained of in this action was caused by the want of ordinary care on the part of the defendant, and was not caused or contributed to by the want of ordinary care on the part of the plaintiffs, then the plaintiffs are entitled to recover such damages for the injury occasioned thereby, and interest thereon in the discretion of the jury from the time of the injury, as the jury may find the plaintiffs have sustained; and in determining the question of ordinary care, the jury are entitled to consider the circumstances under which the collision took place, and the rule of navigation which requires, that in order to avoid a collision between a steamer and a sailing vessel, it is the duty of the vessel moved by steam to get out of the way of the vessel propelled by sails, and it is the duty of the sail-

ing vessel to hold her course; and if they shall find that either party to this suit violated this rule, without being justified in doing so by the surrounding circumstances, then the party so acting was guilty of a want of ordinary care.

To the rejection of its prayers and to the instruction given by the Court, the defendant excepted, and the verdict and judgment being for the plaintiffs, it appealed.

The cause was argued before BARTOL, C. J., MAULSBY, MILLER and ALVEY, J.

*Wm. Schley* and *Thomas Donaldson,* for the appellant.

The defendant's first prayer was correct, and ought to have been granted in terms as prayed. *Redfield on Carriers and other Bailments,* 356, &c., and the cases referred to in the notes; *The Fanny Fern and Thomas Swann,* 1 *Newberry,* 160, and 6 *McLean,* 282; *The New Jersey, Olcott,* 519; *The Neptune, Olcott,* 493; *Crockett vs. Newton,* 18 *Howard,* 583; *The Nautilus,* 2 *Ware,* 529.

The defendant was entitled to have had the prayer granted, as it embodied a principle of law, applicable to the case. *Sowerwein vs. Jones,* 7 *Gill & Johns.,* 341.

The second prayer of the defendant ought to have been granted. It announced a clear rule of law. The question of fault or no fault is necessarily a question of fact, to be passed on by the jury; except where there is some fixed principle of law, which, upon a given state of case, precludes all enquiry.

But the Court erred in its instruction, in applying to the steamer in this case, used for the purpose of continuing the railroad across the River Susquehanna, the rules and regulations prescribed by the Act of Congress, approved 29th April, 1864, for the Navy and Mercantile Marine of the United States. 13 *Statutes at Large,* 60, 61.

But even if that statute was applicable to this steamer, engaged in a special service, which made it, in fact, a moving portion of the railroad, still there was error in the instruction,

given without qualification, that it was *the duty* of the sailing vessel to hold her course, without regarding the provisions of the 18th, 19th and 20th sections of said statute.

Also in saying, that if they should find that either party violated the rule, *that the Steamer must keep out of the way, and that the Schooner must hold her course,* without being JUSTIFIED in doing so, by the surrounding circumstances, the party, so acting was guilty of a want of ordinary care. It is open to several exceptions, *firstly,* it is ambiguous, wanting in precision, involving rather a conclusion of law than matters of fact, and calculated to mislead and embarrass the jury; *secondly,* it impliedly affirms, that the canal boat was *not* to blame for not changing her course or anchoring; although it might have been found, by the jury from the evidence, that changing her course was possible and, in view of the immediate danger would have been a proper departure from the rule, and a wise precaution to avoid impending danger; and that throwing out the anchors would have been prudent, and perhaps, efficacious to prevent collision; and *thirdly,* because under this instruction, even if the jury should have found, from the evidence, that the conduct of the captain of the canal boat, was rash, reckless and perverse in holding his course, and neglecting all precautions and efforts to avoid collision, still the owners were entitled to recover, because the defendant had no lookout on the starboard side of the steamer.

But the Act of Congress was not in force when the collision in this case occurred. It took place in May, 1862; and, in so far as that Act may have introduced, as peremptory, certain rules of navigation, theretofore found only in reported decisions, and in the practice of mariners, it can have no application. The case is to be tried upon the state of the law existing at the time.

*Henry Stockbridge,* for the appellees.

It was evidently the object of the first of the instructions to define to the jury the term " ordinary care," which, as

used in instructions, is always ambiguous, and often utterly meaningless. Courts are always compelled to define that term or juries are misled. This Court, on the former trial of this cause, defined it (25 *Md.*, 531,) as the "observance of the precautionary rules and regulations, established by competent authority, to guard against accidents and prevent injuries to others." This language, although plain, conveys no definite idea to jurymen, who do not know what "precautionary rules and regulations have been established by competent authority." The Judge, therefore, very wisely and properly proceeded to state what those "precautionary rules and regulations" were, so far as applicable to the circumstances of this collision. In doing so, he stated the law correctly, as laid down by the highest tribunals, with perfect uniformity, in England and this country, from the commencement of steam navigation till Congress, by the declaratory Act of 1864, gave the settled rule the authority of National Statute. *St. John vs. Paine,* 10 *How.,* 583, 584; *Newton vs. Stebbins,* 10 *How.,* 606; *The Oregon vs. Rocca,* 18 *How.,* 572; *Culbertson vs. Shaw,* 18 *How.,* 587; *Liverpool Steam. Co. vs. Rumball,* 21 *How.,* 384; *The Carroll,* 8 *Wallace,* 302; *Art.* 15, 13 *U. S. Stat. at Large,* 60; *Handaysyde vs. Wilson,* 3 *Car. & P.,* 528.

The duty of all vessels, in localities where collision with other vessels is possible, to maintain a constant and vigilant lookout, is one of the first dictates of common sense, and one of the first requirements of law. *The Europa,* 2 *Eng. Law and Equity,* 562; *Netherlands Steam Ship Co. vs. Styles,* 40 *Eng. Law and Equity,* 27; *The Genesee Chief vs. Fitzhugh,* 12 *Howard,* 463.

MILLER, J., delivered the opinion of the Court.

The first appeal in this case is reported in 25 *Md.*, 521, where the judgment was reversed and the present trial was had under the *procedendo* then issued. The suit is to recover damages resulting from the collision of the defendant's steam-

boat with the plaintiff's canal boat, by which the latter and her cargo were totally lost. The facts are substantially the same as in the former trial. The canal boat, propelled by sails, had started from her wharf, and was on her way down the Susquehanna river, and while holding her course under a light wind was struck by the steamer and sunk. The steamer belonged to the defendant, and was used in transporting its engines, cars and passengers across the Susquehanna, from Perryville to Havre de Grace, and the collision occurred while she was on one of her regular trips across the river.

At the first trial the Court instructed the jury that it was the duty of the defendant to exercise the utmost care and diligence it was in its power to employ, considering the nature of the business in which it was engaged. But as both boats were on a common highway, each in pursuit of a lawful business, engaged in avocations wholly independent of each other and without any relation of contract or trust imposing any special duty from either to the other, this Court reversed that instruction as prescribing a too rigorous rule, and decided the defendant was only required to exercise such reasonable care to avoid injury to the plaintiffs as ordinary prudence would suggest; that is, such a degree of care and attention as experience has found reasonable and necessary to prevent injury to others in like cases. The Court then observe that the terms "ordinary care and diligence" are comparative and always bear a direct relation to the particular circumstances of each case; that the increasing probabilities of danger require a corresponding increase of care and vigilance to avoid it, and they then quote with approval from the case of *Kelsey vs. Barney*, 2 *Kernan*, 425, where it is said by the Court of Appeals of New York: "The degree of vigilance which the law exacts by the requirement of ordinary care, must vary with the probable consequences of negligence, and also with the command of means to avoid injuring others, possessed by the person on whom the obligation is imposed. Under some circumstances a very high degree of

vigilance is demanded by the requirement of ordinary care. Where the consequence of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury upon others are completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight." The Court also further remark that "it may be said in general, that any failure by one engaged in the pursuit of his own occupation or business, to observe precautionary rules or regulations, established by competent authority to guard against accidents and prevent injuries to others, is in legal contemplation a want of ordinary care. It matters not whether the business be prosecuted on land, on the water, or upon both, the established rules for regulating the course of conduct on either, so far as they relate to the safety of others, should be duly regarded to satisfy the first requirement of ordinary care."

At the present trial the Court rejected the prayers on both sides and granted an instruction of its own. The two instructions asked by the defendant, and to the rejection of which exception is taken, assert: 1st, That the plaintiff cannot recover if the jury find there was want of ordinary care on the part of the plaintiffs which contributed to the collision, even if they find there was fault also on the part of the defendant; and 2d, That even if they find there was no negligence on the part of the canal boat, still, in order to enable them to find for the plaintiffs, they must be satisfied from the evidence there was want of ordinary care on the part of the defendant, in failing to exercise such care and diligence as the defendant had the means to employ, having regard to the business in which the defendant was engaged. By the first part of the Court's instruction, the jury were told that if they found the collision was caused by the want of ordinary care on the part of the defendant, and was not caused or contributed to by the want of ordinary care on the part of the plaintiffs, then the plaintiffs are entitled to recover. If the instruction had stopped here, there would exist no plausible ground on which

the defendant could found an objection to it. It correctly and very clearly states the general rule as to contributory negligence on the part of the plaintiffs, and of negligence on the part of the defendant. In effect it embodies the law of the two prayers of the defendant, and gave it substantially all its counsel had asked for.

But the Court in its instruction further told the jury that in determining the question of ordinary care, they could consider the circumstances under which the collision took place, and the rule of navigation which requires that in order to avoid collision between a steamer and a sailing vessel, it is the duty of the former to get out of the way of the latter, and it is the duty of the latter to hold her course, and if they find either party violated this rule, without being justified in doing so by the surrounding circumstances, then the party so acting was guilty of a want of ordinary care.

This part of the instruction has been vigorously assailed in argument, as announcing law inapplicable to the case, as well as being ambiguous, and calculated to mislead and embarrass the jury. To determine whether it contains any error warranting a reversal of the judgment, it is important to ascertain, first, whether it properly defines the rule of duty for the steamer, and correctly declares that the non-observance by her of that rule, without justifiable cause, constituted in law want of ordinary care on her part. The rule of navigation, that whenever a sailing vessel and a steamer are proceeding in such direction as to involve risk of collision, it is the duty of the latter to keep out of the way of the former, was well established by the highest judicial authority, and with perfect uniformity of decision, both in England and in this country, long prior to the Act of Congress of 1864, chapter 69, adopting it as a rule for the navy and mercantile marine of the United States. Like others of the same character, it is a nautical rule, based upon experience and sound reasons, framed and administered for the purpose of preventing disasters by collisions, and to afford security to life and

property exposed to such dangers; and public policy, as well as the best interest of all concerned, requires it should be constantly and rigidly enforced in all cases to which it applies. Thus, in *St. John vs. Paine*, 10 *Howard*, 583, the Supreme Court, in giving the reasons on which the rule is founded, say: "Steam vessels are regarded in the light of vessels navigating with a fair wind, and are always under obligations to do whatever a sailing vessel, going free or with a fair wind, would be required to do under similar circumstances. Their obligation extends still further, because they possess a power to avoid the collision not belonging to sailing vessels, even with a free wind, the master having the steamer under his command both by altering the helm and by stopping the engines. They are also of vast power and speed compared with craft, on our rivers and internal seas, propelled by sails, exposing the latter to inevitable destruction in case of collision, and rendering it at all times difficult and not unfrequently impossible to get out of their way. Greater caution and vigilance are, therefore, naturally to be exacted of those in charge of them to avoid the dangers of the navigation. This justly results from the superior power to direct and control the course and speed of the vessel, and the serious damage consequent upon a failure to avoid the dangers. As a general rule, therefore, when meeting a sailing vessel, whether close-hauled or with the wind free, the latter has a right to keep her course, and it is the duty of the steamer to adopt such precautions as will avoid her." This and similar rules are administered and enforced in cases where they are applicable, as well by Courts of Common Law as in Admiralty. *Jameson vs. Drinkald*, 12 *Moore*, 148; *Handaysyde vs. Wilson*, 3 *Curr. & Payne*, 528; *Mellon vs. Smith*, 2 *E. D. Smith*, (*N. Y. Rep.*,) 462. That the rule cited does apply to the present case, has, we think, been settled by our predecessors in their opinion on the former appeal. We can place no other construction on their language when they speak, as applicable to the case before them,

if "precautionary rules or regulations established by compe-
tent authority to guard against accidents and prevent inju-
ries," and say that, to satisfy the first requirement of ordinary
care by a party prosecuting his business on the water, he
must regard "the established rules" for regulating the course
of his conduct so far as they relate to the safety of others.
But apart from this, and supposing the question an open one,
why should not the rule be applied to this case? No reason
has been suggested except that the steamer was engaged in
transporting a train of cars, with passengers and freight,
across the river, to be forwarded by the railway on the other
side, and that she had been accustomed to cross at stated
times, with regular speed, and in a particular and well-
known track, and was on the line of that track when the
collision occurred. The argument based on these facts, car-
ried to its logical result, is, that the passage of the steamer
was in fact a prolongation of the railway track, and it hence
became the duty of all sailing vessels passing up or down
the river, to take notice, at their peril, of her times of cross-
ing, her speed and prescribed route, and observe the same
precautions in getting out of her way as parties travelling on
land are required to observe in avoiding a coming or passing
train of cars. In other words, if she rang her bell and blew
her whistle at starting and while crossing, she had the right
to pursue her accustomed route with her usual speed, and
when so proceeding, would stand excused if she ran down
every sailing vessel that might happen to come in her way.
We cannot sanction that view of the case. This steamer was
not part of the railway track, nor had she any prescriptive
or other right to the exclusive use of any fixed and definite
portion or space of the navigable water she was accustomed
to traverse. She was propelled by steam, was crossing a
large navigable river, in each and every part of which sail-
ing vessels, propelled by wind and tide, had the same right
to traverse that she had. Her case was in no respect different
from that of an ordinary steam ferry-boat, using navigable

water frequented by all manner of sailing craft. If the rule does not apply here, there will be a large class of cases, where it is most useful and needed, entirely exempt from its operation. The rule is a general one, not depending on the length of the route of the steamer, or whether it be up or down or across a navigable stream, and we have no doubt of its applicability to the case before us. There may be exceptions to or cases justifying a departure from it. The difficulties or dangers of navigation, or of collision with other vessels in a thickly crowded harbor or river, may be such as to excuse the steamer in violating the rule with respect to a particular vessel, and make a given collision a case of inevitable accident, but there is no proof of any such difficulties or dangers in the present case. There were no other vessels in the way, the navigation was not dangerous, and there was ample and safe sea-room for her to have stopped, backed or turned aside. The collision occurred in day-light, on an open, clear day, when the movement of each vessel was perfectly apparent to the other, and from aught that appears, the steamer could have observed the rule, with perfect safety to herself, and avoided the sailing vessel by turning her own course, or stopping her engines in time. But if any surrounding circumstances existed to justify a departure from the rule, it was for the jury to find them, and the instruction so left it to their finding. We are, therefore, satisfied no error available to the appellant exists in this branch of the Court's instruction, in so far as it refers to the steamer.

Nor can we discover any fatal error in what is said in regard to the sailing vessel. The rule is applicable to her, and her obligation and duty, are equally well established and equally explicit. "Few cases can be imagined," says the Supreme Court in 21 *How.*, 383, 384, "where it is more needful that these rules should be observed, than when a steamer and a sailing vessel are approaching each other from opposite directions or on intersecting lines, for the obvious reason that the negligence of the one is liable to baffle the

vigilance of the other; and if one of the vessels under such circumstances follows the rule and the other omits to do so, or violates it, a collision is almost certain to follow.  Sailing vessels approaching a steamer are required to keep their course on account of the correlative duty which is devolved upon the steamer to keep out of the way, in order that the steamer may know the position of the object to be avoided, and may not be led into error in her endeavor to comply with the requirement.  Under the rule that a steamer must keep out of the way, she must of necessity determine for herself and upon her own responsibility, independently of the sailing vessel, whether it is safer to go to the right or left, or to stop; and in order that she may not be deprived of the means of determining the matter wisely, and that she may not be defeated or baffled in the attempt to perform her duty in the emergency, it is required in the admiralty jurisprudence of the United States that the sailing vessel shall keep her course, and allow the steamer to pass on the right or left, or to adopt such measures of precaution as she may deem best suited to enable her to perform her duty and fulfil the requirement of the law to keep out of the way.  Repeated decisions of this Court have affirmed the doctrine here laid down and carried it out to its logical conclusion, and in so many instances that the question cannot any longer be regarded as open to dispute."  The proof is without contradiction that the sailing vessel in this case did hold her course and observe the rule.  There is proof however from which the jury might have found that by luffing or casting anchor she could possibly have avoided the collision, and it is argued that in view of the immediate peril a departure from the rule on her part would have been a proper and wise precaution to avoid the danger, and that the instruction is therefore erroneous in that it impliedly assumes she was not to blame for not changing her course or anchoring.  But the question material to the case is not whether the collision might have been avoided by a departure from the rule by the sailing vessel, but whether she is to be visited with the consequences of contributing

negligence in observing the rule and keeping her course as she had the right to do. It is possible if she had cast anchor or turned her course when she first saw the steamer under way the collision would not have occurred, as it certainly would not if she had not started from her wharf until after the steamer had crossed. But she had the right to start at any time she chose, and once having started the rule made it her duty to hold her course. Those in charge of her had the right to assume the steamer was intelligently guided and would in proper time discharge her duty, and it is impossible to say they were bound at any instant of the time of approach before it was too late to avoid the danger, to assume the contrary and act accordingly, and if the collision had occurred on her attempt to do so, the steamer might justly say the fault lay with the sailing vessel in not holding her course. If the collision had resulted in damage to the steamer, and her owners were plaintiffs, it cannot be doubted the non-observance of the rule regulating her conduct, without just cause in so doing, would have amounted to contributing negligence barring a recovery, and we cannot see by what process of reasoning the observance of the rule by the sailing vessel in connection with its non-observance by the steamer can be wrought into want of ordinary care on the part of the former. We certainly find nothing in that part of the instruction relating to the sailing vessel, entitling the appellant to a reversal.

The remaining portion of the instruction, that by the rules of navigation it is the duty of steam vessels navigating waters where sailing vessels are often met with, to keep a trustworthy and constant lookout besides the helmsman, and if the jury find the defendant did not have such a lookout at the time of the collision, and that the happening of the collision might have been prevented by keeping such lookout, this omission was a want of ordinary care on the part of the defendant, is clearly correct, and was not seriously questioned in argument. The judgment must therefore be affirmed.

*Judgment affirmed.*

(Decided 6th December, 1870.)