# V. J. SCHELL

*vs.*

# UNITED RAILWAYS & ELECTRIC COMPANY.

### Street Railway—Collision at Crossing—Contributory Negligence.

Negligence is essentially relative and comparative and depends upon the circumstances out of which it grows, and the existence of negligence is, therefore, to be sought for in the facts and surroundings of each particular case.             p. 531

In an action for injury to plaintiff's truck, caused by a collision with defendant's car at a street crossing, there being evidence that the car was running at an excessive speed, that plaintiff's driver looked for approaching cars at the first opportunity, when he was twelve feet from the track, where he could see for a distance of ninety feet, and, seeing nothing, approached the track cautiously, watching a car coming from the opposite direction, and was immediately so near that he could not have avoided the collision even if he had seen the car, *held* that the question of contributory negligence was for the jury.

pp. 531-533

*Decided January 17th, 1924.*

Appeal from the Superior Court of Baltimore City (FRANK, J.).

Action by V. J. Schell, trading as the Schell Transfer Company, against the United Railways and Electric Company of Baltimore. From a judgment for defendant, plaintiff appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*William D. Macmillan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellant.   ●

*J. Pembroke Thom* with whom was *Walter V. Harrison* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is a case of collision between an automobile truck owned by appellant, the plaintiff below, and an electric street car of appellee. It occurred in the day time, but early in the morning when the streets were slippery from sleet. The place of the accident was at the intersection of Hudson and Clinton Streets in Baltimore City. Hudson Street runs east and west and Clinton Street north and south. The double tracks of the street railway company are on Hudson Street, and on either side of the tracks there is room for vehicles to pass between the track and the curb line. There is also a paved sidewalk on each side of the street. Plaintiff's witness estimated Clinton Street to be about forty feet wide from curb to curb.

Plaintiff's chauffeur, Raymond Strolle, testified that at about 7 A. M. on January 12th, 1922, he was driving plaintiff's three-and-a-half ton truck in a northerly direction on Clinton Street towards Hudson Street; that with him as his helper, sitting on his right, was Lawrence H. Goeb; that it was up-grade when approaching the intersection of Hudson Street, and the street was slippery from rain of the night before, which had frozen; that when he got within about twelve feet of the car tracks he glanced to his left, and could see practically as far as the alley, about ninety feet, and did not see anything coming at all, and at the same time he glanced to the right and saw a car coming west on Hudson Street; there were three or four people standing on the northeast corner; that he watched the west bound street car and slowed his truck down, slowed it down gradually because there was ice on the ground, and was watching it to see if it

came to a stop or not, and while watching it he got in about three feet of the car track and his helper "hollered 'look out,' and I did not know what he was hollering at, and I glanced and I saw this street car coming down in front of me. Q. Coming which way? Ans. Coming east. Q. Then what did you do? Ans. I did all I could to bring my truck to a stop, and there was ice on the ground as I said before, and I swerved to the right, applied the brake and left the clutch out to keep from skidding, and just as I did that it hit me, before I could get out of the way. Q. What did the street car do after that time? Ans. The street car kept going and stopped one square away, at First Street. Q. What, if anything, did it do to your truck? Ans. Why, it bent the chassis and broke the crank case, and hurt the motor and generally all over. Q. Did you hear any bell rung by the street car coming east on Hudson Street? Ans. No, sir."

On cross-examination the witness said he had been driving a truck about six years; was familiar with that section of the city; had previously been on Clinton Street and knew there were car tracks on Hudson Street; that when he was approaching Hudson Street he was going about ten miles an hour, but when he got within twelve feet of Hudson Street, that is twelve feet of the railroad track, he slowed down and was going about eight miles; that the building on the corner prevented him from seeing further than ninety feet; "there is a building on the corner—I just glanced around the corner like—not being all the way up to Hudson Street—if I was clear of the building I could see all the way up Hudson Street three or four squares." The witness admitted that it might have been more than twelve feet from where he looked to the track; "I judge about that but I won't say for sure."

"Q. Now, as you approached towards the track, and after you cleared the building line, did you not take another look to see if the eastbound car was coming? Ans. My attention was attracted to this westbound car; I was watching on my right hand side then, you see."

The witness further testified that his brakes were in good condition; that he could shift his gears easily; that in the condition the street was in it would require at least ten feet to bring his truck to a dead stop; that when his helper called his attention to the car that was approaching from the west it was a little past the curbing on Clinton Street; his truck had not then gone on the track; that it did not get on the track at all, but ran into the side of the car back of the front platform.

Lawrence H. Goeb corroborated the previous witness in all essential details; he saw the eastbound car when the truck was about five feet from the track, told the driver to stop, and he stopped and threw his car to the side towards the east, to save the car from hitting them. "The motorman just kept coming right through, and he did not know what had happened until the crash came, and then I saw fire fly from under the wheels. Q. Wheels of what? Ans. Of the street car—the wheels were going around the opposite way and he stopped on the square below at First Street. Q. You mean the reverse had been thrown on the car apparently and fire was coming out of the wheel? Ans. That is it exactly, the fire was coming out." The witness further testified that it was a one man car—only a motorman who acted also as conductor. "Q. When you looked towards the west the reason you could not see down Hudson Street was because the building was in your way? Ans. No, sir, I looked about ninety feet—ninety feet was sufficient to clear a street car. Q. How far would you say the distance was from the buildings on Hudson Street to the car track, the eastbound car track? Ans. I should judge about sixteen feet."

Another witness, George W. Freund, testified that he was standing on the northeast corner waiting for a westbound car, and saw the truck approaching and watched it until it got within ten or twelve feet of the track; then he stepped off the curb to the street and looked east and saw his car coming, "and then I heard the crash, and as I did the car just blowed

past." The witness did not hear any bell from the street car and did not see the car until he heard the crash.

Other witnesses testified as to the damage to the car.

At the close of plaintiff's testimony the defendant asked for a directed verdict in favor of defendant on the ground of contributory negligence, and the court granted the prayer. This ruling of the court is the subject of the only exception.

The testimony has been given at wearisome length because, as has been said in a number of cases, negligence is essentially relative and comparative and depends upon the circumstances out of which it grows. As these circumstances necessarily vary in their relation to each other, under different surroundings they inevitably change their original significance and import. Hence it is intrinsically true that those things which would not under one condition constitute negligence, would, on the other hand, under a different, though not necessarily an opposite condition, most unequivocally indicate its existence.

The existence of negligence is therefore to be sought for in the facts and surroundings of each particular case. This is substantially the language of CHIEF JUDGE McSHERRY, who wrote the opinion of this Court in *Cooke* v. *Baltimore Traction Co.,* 80 Md. 551. See also *United Rys. Co.* v. *Watkins,* 102 Md. 264, wherein the same learned judge wrote the opinion, and in it pointed out the difference between the rules applicable to cases like this and those applicable to a case which grows out of an injury inflicted at a crossing over a railroad in the open country, and the underlying reasons for the distinction.

In the present case counsel for appellant and appellee rely respectively upon the cases of *United Rys. Co.* v. *Mantik,* 127 Md. 197, and *Foos* v. *United Rys. Co.,* 136 Md. 540, in each of which JUDGE URNER wrote the opinion of this Court. These two cases are illustrative of the truth of the observations of JUDGE McSHERRY in *Cooke* v. *Balto. Traction Co., supra.* The facts in the two cases were somewhat alike, and

yet the differing circumstances necessitated different conclusions. In the later case JUDGE URNER explained very clearly the essential difference between the two.

The case at bar is not precisely like either of those cases, but its facts and circumstances are more nearly analogous to those in the Mantik case, and we are unable to distinguish in principle between that case and the one now under consideration.

In the present case, as in the Mantik case, there was evidence of excessive speed of the street car. In the Mantik case the driver of the automobile looked at the first opportunity for approaching cars, his car being then about six or seven feet from the railway. In the present case the chauffeur looked at the first opportunity when his truck was about twelve feet from the track.

In the Mantik case the driver saw the car approaching but it was too late to escape collision by stopping his car. In the present case the driver, although he could look in the direction from which the car came for a distance of ninety feet, did not see the car, and seeing nothing, proceeded cautiously towards the track, watching a car approaching the crossing from the opposite direction. Practically an instant after he turned his head his truck was nearer the track than ten feet, which he said was the least distance in which he could stop.

Assuming the truth of his testimony, if he had looked again and seen the approaching car sooner than he actually saw it, it would have availed him nothing, because even then it would have been too late for him to stop. It could not be said, therefore, as a matter of law, that his failure to look again contributed to the accident.

If it be said that he should have brought his car under complete control by practically stopping at a point nearer the track from which he could have gotten a longer view, it could likewise be said of the driver in the Mantik case that

if six feet from the track was the first point from which he could get a view of approaching cars, at that point his car should have been brought to a stop or at least within instant control.

But as JUDGE URNER said in the Mantik case in answer to such a contention, so it may be said in this: "The absence of any warning signal of the car's approach might naturally have induced the chauffeur to proceed further than he would otherwise have gone towards the crossing, and the 'full speed,' as described by one of the witnesses, at which the cars were moving, doubtless made it impossible for the motormen to prevent the collision by checking the motion of the cars in the time and space available after the danger became apparent." In these circumstances it was held in the Mantik case that the question of contributory negligence was one for the jury. See also *United Rys. Co.* v. *Watkins, supra.*

In our case there are all the elements of doubt which existed in the Mantik case, and in addition there is the circumstance of a car approaching the crossing from the opposite direction on the westbound track, and the fact that the driver had a longer view, ninety feet, before attempting to cross.

As to the effect upon the question of contributory negligence of excessive speed of an approaching street car which changed conditions as they appeared to one about to cross the tracks, see *Watkins' case, supra.*

If there were any evidence in the record of accurate measurements showing a substantially greater distance from the building line to the tracks, as against the estimates of plaintiff's witnesses, another element would have to be considered.

The principles governing cases of this kind are fully set out in the cases hereinbefore cited, and it would be but repetition to restate them.

We are of the opinion that this case, on the present record, is controlled by the Mantik case and the Watkins case, *supra,* and must hold that there was error in withdrawing it from the jury.

> *Judgment reversed and new trial awarded, with costs to appellant.*

---

OFFUTT, J., delivered the following dissenting opinion:

The plaintiff in this case owned a truck which was damaged in a collision with a street car operated by the defendant. The collision occurred at the intersection of Clinton Street with the east bound or southerly tracks of the defendant on Hudson Street at about 7 o'clock in the morning.

The undisputed facts are that the driver operating the truck could have stopped it in ten feet, or in time to have avoided the collision, had he attempted to do so as soon as he could, by looking in the direction from which a car was to be expected, have known of its approach. He did not look when he should have looked, and the collision occurred either because he did not look or because he had permitted the truck to be so far out of his control that when he did look it was impossible to avoid the collision. He did, when he reached a point from which he had a view for ninety feet of the east bound or nearest track, "glance" to his left, the direction from which a car on those tracks would come, and seeing no car, did not look again until it was too late to stop the truck before reaching the tracks. That is to say, when he got beyond the building line on Hudson Street, where, if he had looked, he could have seen the approaching car, he was driving the truck so rapidly that he could not stop it before reaching the tracks even if he had seen the car.

These facts are not disputed, and I think they show as a matter of law that the negligence of the driver contributed to the accident complained of. The rights of the general public and public service transportation companies on the public highways are reciprocal and equal. In operating its cars the appellee is confined to its tracks, and its tracks are notice that cars may be run over them, and no one can without negligence approach such tracks with his eyes shut or his head turned, or the operation of a vehicle permitted by him to be so far beyond his control that when he can know of the approach of the car it is too late to avoid a collision. Upon these facts I am unable to distinguish this case in principle from *Foos* v. *United Rwys.*, 136 Md. 540, and am, therefore, unable to concur in the opinion filed in this case.