STATE OF MARYLAND, TO THE USE OF STATE ACCIDENT COMMISSION, ET AL. *v.* CARROLL-HOWARD SUPPLY CO., ET AL.

[No. 17, April Term, 1944.]

294

*Decided May 4, 1944.*

The cause was argued before MARBURY, C.J., DELAPLAINE, COLLINS, GRASON, MELVIN, and BAILEY, JJ.

*Deely K. Nice* and *Donald Bowie, Jr.,* with whom were *William C. Walsh, Attorney General, Max Sokol,* and *Dickerson, Nice & Sokol* on the brief, for appellants.

*Roszel C. Thomsen* and *Joseph Sherbow,* with whom were *Clark, Thomsen & Smith* for Carroll-Howard Supply Co., Inc., and *Sherbow, Harris & Medwedeff* for Hayden H. Bond on the brief, for the appellees.

BAILEY, J., delivered the opinion of the Court.

This is an appeal by the plaintiff from a judgment n. o. v. for costs in favor of the defendants, entered under Trial Rule 8 of the General Rules of Practice and Procedure, 1941, on motion of the defendants after the jury empaneled to try the case had been discharged for failure to agree on a verdict. At the trial each of the defendants, Carroll-Howard Supply Company, Inc., and Hayden H. Bond, moved for a directed verdict for the following reasons: because there was no evidence in the case legally sufficient to entitle the plaintiff to recover; because there was no evidence in the case legally sufficient to prove that the defendant, Bond, was guilty of any negligence which was a proximate cause of the death of William J. Hauck, husband of one of the equitable plaintiffs; and because it appeared from the uncontradicted evidence in the case that Hauck, the deceased, was guilty of negligence directly contributing to the happening of the accident complained of. Both motions were overruled at that time and the case was submitted to the jury. Upon the failure of the jury to agree upon a verdict and its subsequent dismissal, and within the time limited by Trial Rule 8, motions for judgment n. o. v. were made by both defendants. The motions were then granted by the court and the judgment n. o. v. entered. It is from this judgment that the appeal is taken.

The plaintiff contends that the judgment should be reversed because the evidence was legally sufficient to establish primary negligence on the part of the defendants and because the evidence does not establish contributory negligence by the deceased as a matter of law.

On January 7, 1943, William J. Hauck, who was employed by Wilcox & Ziegler, Inc., as the driver of a coal truck, was at the yard of the Baltimore Service Coal Company, located at the northwest corner of Maryland Avenue and Oliver Street, in Baltimore. The office of the company is on the eastern part of the lot and immediately to the west of the office are two scales upon which the loaded trucks are driven to be weighed. The

No. 1 scale, which is nearest the office, is nine feet, one inch in width. It is separated from the No. 2 scale, which is nine feet wide, by a concrete partition, which, at its northerly end, is seventeen inches wide. There are concrete buffers twenty-one inches wide on both sides of the partition, extending from the partition to the edge of the platform of the scale. The height of the buffers is not given but the photograph offered in evidence indicates that it is about six inches. The trucks are loaded on the northern part of the lot and are then driven in a southerly direction to the scale. Hauck had driven his loaded truck on the No. 2 scale, facing in a southerly direction towards Oliver Street, and had then entered the office, leaving his helper on the truck. Another truck was on the No. 1 scale. The truck owned by the defendant, Carroll-Howard Supply Company, Inc., and driven by the defendant, Bond, was loaded and waiting about thirty feet north of the scales, to enter the No. 1 scale as soon as it was vacant.

Louis A. Hauck, a brother of the deceased, testified that he was sitting in the cab of his truck, about twenty feet behind the Bond truck, waiting to enter the No. 2 scale, when it was vacated by his brother's truck; that his brother came out of the office and walked north of the No. 1 scale and stood in front of the partition, or pillar separating the scales, with his right foot on a pile of soft coal which was north of the partition and extended slightly beyond the buffers; that he was standing near the entrance to the No. 1 scale at an angle of forty-five degrees, looking up at the helper on his truck and giving him directions as to the load of coal; that, while he was standing in this position, the Bond truck, which had been stationary, moved forward at a speed of four or five miles per hour to enter the No. 1 scale; that the Bond truck gave no warning of its approach; that the cab of the truck passed his brother and that the truck then "moved more to his right. That's when the side of his body hit my brother; the front part of his truck passed him, the cab passed him and his body

started to pass him, but as he swung more to the right he hit my brother in the back, up in his left shoulder, and throwed him underneath the truck"; and that he could not tell the exact spot of the body which hit his brother. However, on a photograph of the truck he indicated the point of contact as the second stake on the right side of the body, some distance in front of the rear wheel. It was admitted that the front of the truck was sixty-seven and one-half inches wide and that the body was ninety-one and one-half inches wide. This would cause the right side of the body of the truck to extend twelve inches beyond the right front fender.

This witness further testified that it was customary for all the truck drivers using this coal yard to stand in the position in which his brother was standing when they were giving directions to their helpers on the trucks using the No. 2 scale, and that after his brother had taken this position he never moved until he was hit by the body of the truck.

James Johnson, the helper on the Bond truck, testified that as the truck was approaching the No. 1 scale he was riding on the right front fender, with his left leg across the light and his right leg hanging by the side of the fender; that he saw Hauck standing on top of the coal pile in front of the pillar, with his back to the approaching truck; that Bond did not blow his horn; that, as he passed Hauck, "if I had leaned way over I could have touched him"; and that the truck kept going straight. When he was asked to indicate on the photograph Hauck's position he placed him on the coal pile in front of the pillar but near the entrance to the No. 2 scale.

The defendant, Bond, testified as follows: "When I came up to the scale there wasn't anyone on the scale that I was going on. I was in low gear. I didn't stop for anybody. I come right up to the scale. I was driving in a straight line. There's a little incline there when you go up on the scale. I did not change my speed or direction. I was already in low, I didn't have to change

my gear. I was going straight forward about four or five miles. I was at least forty or fifty feet back in the yard—back from the scale—when Mr. Hauck came out of the office and walked in front of me. I was moving towards the scale." He further testified that Hauck walked over the little pile of coal and stopped to talk to his helper on the truck; that he stood with his back to the approaching truck and that he "was standing perfectly still when I passed him"; and that "when I passed him the front fender was around three or four feet away from him".

On cross-examination he admitted that he had previously stated to the police that the right front fender of his truck had cleared Hauck by "at least two feet", and he testified that if his right front fender was within two feet of Hauck he would have had to warn him to prevent him from being hit, but that no warning was given.

On this testimony the jury was entitled to pass upon the questions of primary and contributory negligence. Both the deceased and Bond were lawfully upon the premises of the Baltimore Service Coal Company, and it was the duty of Bond while on said premises to exercise reasonable care and diligence relative to the circumstances in the operation of his truck. Bond knew that it was the custom of the drivers to stand north of the scales and direct their helpers on the trucks which were on the scales. He saw Hauck assume such a position. There is no evidence that Hauck knew that Bond's truck was approaching. It was the plain duty of Bond to use reasonable care and diligence in the operation of his truck so as to avoid injury to any person lawfully on the premises and plainly visible to him. On the testimony in this case the jury could have found that the accident happened and Hauck's death resulted from the failure of Bond to use reasonable care and prudence in the management and control of his truck, in his failure to give warning of his approach by the sounding of his horn. *Feldser v. Beeman,* 176 Md. 377, 4 A. 2d 750.

The evidence is conflicting as to the exact position of Hauck immediately preceding the accident, but his broth-

er's testimony places him in such a position as to impose upon Bond the duty to give warning of his approaching truck. If the jury believe this evidence they could find that the failure of Bond to blow his horn was the direct and proximate cause of the accident. But it is contended by the defendants that the testimony of the witness, Hauck, is too inconclusive, contradictory and uncertain to be the basis of a legal conclusion of negligence. It was said in the case of *Slacum v. Jolley*, 153 Md. 343, at page 351, 138 A. 244, at page 248, that "when a witness says in one breath that a thing is so, and in the next breath that it is not so, his testimony is too inconclusive, contradictory, and uncertain to be the basis of a legal conclusion." This rule was applied in the case of *Oberfeld v. Eilers*, 171 Md. 332, 189 A. 203, 205, which involved a collision between two trucks, where the driver of one of the trucks testified that his truck was six to eight inches from the center of the road, that he kept "well to the center", "as far to the right as possible", "three and a half feet from the right of the traveled, paved portion of the road", and that when he saw the other truck sway towards him, he "kept well to his right" and "held to [his] course", and again in the case of *Askin v. Long*, 176 Md. 545, 6 A. 2d 246. But we do not find any such glaring contradictions in Hauck's testimony. During his lengthy cross-examination he may have placed his brother in positions varying a few inches, but we attach little significance to this, when we realize that the witness was at least fifty feet away and that he was not expecting an accident to happen. And at no time does he place his brother in a position which would render a warning from the driver of the approaching truck unnecessary in the exercise of reasonable care and prudence in the operation and management of the truck.

We are also of the opinion that the jury could have found primary negligence on the part of Bond from the testimony of Hauck to the effect that after the cab of the truck had passed his brother Bond then moved the truck more to his right. It is an elementary physical

law that in turning an automobile to the right, the body pivots on the rear axle and all parts of the body in front of the pivotal point move to the right. And the evidence of Hauck is to the effect that his brother was struck by the right side of the body of the truck well in front of the rear wheel. The jury could well have found that the turning of the truck, after the cab had passed Hauck and while the body was passing him, was under the circumstances of the case a negligent act and the proximate cause of the accident. On this evidence, as well as on the evidence that Bond failed to give any warning of the approach of his truck, we feel that the case should have been submitted to the jury on the question of Bond's primary negligence. This court has held repeatedly that a case will not be withdrawn from the jury for the want of legally sufficient evidence if there is any evidence, however slight, legally sufficient as tending to prove negligence, competent, pertinent and coming from a legal source, but that the weight and value of such evidence will be left to the jury. *Taxicab Co. v. Hamburger*, 146 Md. 122, 125 A. 914; *Taxicab Co. v. Emanuel*, 125 Md. 246, 93 A. 807; *Geiselman v. Schmidt*, 106 Md. 580, 585, 68 A. 202; *Sun Cab Co. v. Reustle*, 172 Md. 494, 192 A. 292.

In the case of *Mayor & City Council v. Bassett*, 132 Md. 427, at page 429, 104 A. 39, it is said: "This court and others have so often and so consistently declared the rule of law as to when cases should be withdrawn from the consideration of the jury for want of legal evidence, that it is only necessary to repeat the rule: and that is, if there be any evidence from which a rational conclusion may be drawn as opposed to the theory of the prayer, the weight and value of such evidence should be left for the consideration of the jury, and, before such a prayer can be granted, the court must assume the truth of all the evidence before the jury, tending to sustain the claim or defense, as the case may be, and of all inferences of fact fairly deducible from it." This is true, though such evidence be contradicted in every particular by the oppos-

ing evidence in the case. The jury alone are competent to decide on facts of which contradictory evidence has been given. *Jones v. Jones,* 45 Md. 144. In the latter case, the Court says, at page 155 of 45 Md.: "This Court has no power to go into a critical analysis of the evidence to determine the comparative weight of that offered by the one side or the other; all that it can properly do, in regard to such question, is to determine whether there was any evidence legally sufficient to be submitted to the jury, and that determination is arrived at without at all considering the question as to the preponderance of the opposing evidence."

This brings us to the consideration of the question of the contributory negligence of the deceased. The rule is that the act relied on to establish, as a matter of law, the existence of contributory negligence must be distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act relied on to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as matter of law. *Holler v. Lowery,* 175 Md. 149, 200 A. 353; *Merrifield v. C. Hoffberger Co.,* 147 Md. 134, 127 A. 500; *Taxicab Co. v. Emanuel,* supra; *Jones v. Wayman,* 169 Md. 670, 182 A. 417. The evidence must show some prominent and decisive negligent act on the part of the plaintiff, or as in this case, the deceased, which directly contributed to the accident and was the proximate cause thereof, and this negligent act must be of so prominent and decisive a character as to leave no room for difference of opinion thereon by reasonable minds. *Jones v. Wayman, supra; Merrifield v. C. Hoffberger Co.,* supra; *Baltimore & O. R. R. Co. v. State,* 104 Md. 76, 64 A. 304; *Cooke v. Baltimore Traction Co.,* 80 Md. 551, 31 A. 327; *Taxicab Co. v. Emanuel,* supra.

It is urged that the act of the deceased in placing himself so close to the path of trucks moving to the scales was such a prominent and decisive negligent act. But in view of the testimony that there was nothing unusual in drivers standing in this position when their trucks were on the scales, we cannot reach this conclusion. We think that this case is to be distinguished from the case of *Storrs v. Hink,* 167 Md. 194, 173 A. 66, relied upon by the defendants. In the instant case there is no evidence that the deceased changed his position in front of the pillar at any time while the defendant's truck was approaching the No. 1 scale, while in the latter case, as stated in the opinion at page 208 of 167 Md., at page 71 of 173 A., "the sudden and unexpected act of the plaintiff which trust her body from security into danger was a matter of a few moments, which no reasonable man in the exercise of ordinary prudence would, under the circumstances, have anticipated, and which, having occurred, afforded no sufficient opportunity to the servants of the defendants to avert in the exercise of due care." The question of the contributory negligence of the deceased, under the circumstances disclosed by the evidence in this case, should have been submitted to the jury.

The case on this record presented factual issues which were for the jury to determine, and the *nisi prius* court erred in entering the judgment n. o. v.

*Judgment reversed, and a new trial awarded,*
*with costs to the appellant.*