### KANTOR *v.* ASH

[No. 106, September Term, 1957.]

*Decided January 17, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Maurice J. Pressman,* with whom were *Schonfield & Schonfield* on the brief, for appellant.

*Foster H. Fanseen* for appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from a judgment for costs entered in the Superior Court of Baltimore City on a jury's verdict for the defendant in a suit resulting from an automobile collision.

On September 11, 1955, the appellant (plaintiff below) had closed his grocery store about 1 p. m., and was driving his automobile, with his wife, on his way home. He was proceeding northerly on Reisterstown Road in Baltimore City behind a line of other automobiles going in the same direction. When between Park Circle and Suffolk Street, which dead ends on the east side of Reisterstown Road, a driver of an automobile in front of the appellant, who wanted to make a left turn into Suffolk Street, came to a stop, as traffic was moving southerly on Reisterstown Road. The appellant testified that two automobiles to the rear of that car came to a stop and he did likewise. Reisterstown Road, at this point, accommodates two automobiles going each way, but, because of parked automobiles at the east and west curbs, there is only one lane for moving traffic going north and south. He further stated that while his 1953 Kaiser sedan was at a standstill, it was struck in the rear by the appellee's 1955 Oldsmobile sedan going in the same direction as the appellant, and the appellee immediately thereafter approached him and said: "I am sorry. It's my fault." He claimed the impact caused his chest to strike against the steering wheel with such force that he developed a heart condition, coronary thrombosis. His testimony was corroborated by his wife; and he offered medical testimony to the effect that his heart condition was the result of the collision.

The appellee testified that he was proceeding at about a half a car's length to a car's length in the rear of the appellant's car "at the normal rate of speed because traffic was very heavy on both lanes of the road, and a car in front of me (the appellant's) made a sudden stop" without a signal, and he, the appellee, just barely touched the car; that he and the appellant exchanged identifications and both then drove from the scene of the accident; that the appellant made no com-

plaint that he had been injured; and the appellee noticed no damage to the appellant's car.

## I

One of the issues in the case was whether there was a causal connection between the collision of the appellant's and appellee's cars and the heart condition of the appellant at the time of trial; and, in this regard, it was relevant to establish whether the heart condition pre-existed the accident. The appellant testified that he had been in good health and had never seen a doctor for heart trouble, burning sensations in his chest or dizzy spells, prior to the accident. The uncontroverted testimony of Dr. John T. King, a well-known heart specialist, was that, ordinarily, the symptoms of a coronary attack would appear within a week, if it were the result of an automobile accident.

On the ground of disproving the general good health of the appellant prior to the accident and impeaching his credibility, the appellee's counsel cross-examined the appellant about three previous injuries to, and law-suits by, the appellant, the last occurring in 1953. In these previous accidents, the appellant had received minor injuries from which he had apparently recovered. No expert testimony was offered by the appellee to dispute the affirmative testimony of the appellant's physicians and heart specialists of a causal connection between the accident and the heart condition, nor to show a causal connection between any of the previous accidents and the heart condition. Nor was there anything in the records of the previous suits to disclose that the appellant was not in good health before the current accident, that the previous accidents had anything to do with the present heart condition, or that he had ever seen a physician for heart trouble, burning sensations in his chest or dizzy spells. However, the trial judge permitted this cross-examination over the objection of the appellant in relation to one of the cases, and "subject to exception" in the other two. The appellant's counsel did not move to strike the testimony, nor did he later request the court for a ruling upon his objections. He did, however, request the court to instruct the

jury that the evidence submitted by the appellee with respect to the several prior accidents had nothing to do with the issue involved in the case being tried of causal connection between the accident of September 11, 1955, and the appellant's subsequent coronary attack.

We do not think the cross-examination should have been permitted in the first place; but, as it was admitted and failed to disclose anything of probative value on the issue of causal connection, the appellant was entitled to have the jury instructed to that effect. This cross-examination was not undertaken to show that the appellant was not in good health before the last accident, but to impeach his credibility. Contradictory statements of a party to a suit are admitted on the theory that they are admissions, 3 *Jones, Evidence Civil Cases,* sec. 846a, and this Court has adopted the general rule in American courts that a witness, whether a party to the suit or not, may be cross-examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge, show his relation to the parties or the cause, his bias, or the like. *Panitz v. Webb,* 149 Md. 75, 80-81, 130 A. 913; *Mahan v. State,* 172 Md. 373, 191 A. 575. There are, however, certain qualifications and exceptions to this rule. One of these exceptions is that a witness may not be impeached by showing he has made statements which contradict his testimony in respect to facts that are collateral, irrelevant or immaterial to the issues of the case. Among the many Maryland cases so holding, see *Consol. Beef Co. v. Witt and Co.,* 184 Md. 105, 112, 40 A. 2d 295; *Balto. Transit Co. v. Castranda,* 194 Md. 421, 440, 71 A. 2d 442. See also *Jones, op. cit.,* sec. 845; *McCormick, Evidence,* sec. 47; 3 *Wigmore, Evidence* (3rd Ed.), secs. 1001, *etc.* Cf. *Ausherman v. Frisch,* 164 Md. 78, 86-87, 163 A. 852. Therefore, if we assume, without deciding, that the alleged prior statements of the appellant concerning the previous accidents and law suits were contradictory, they were inadmissible, because, as pointed out above, they—or certainly those relating to the last two accidents before the present one—did not relate to a relevant or material matter in issue. Of course, it does not constitute reversible error every time a witness is

permitted to be cross-examined upon a collateral matter, or when the trial court refuses to grant a proper prayer. In this case, however, we think the cross-examination of the appellant was such as to overshadow the real issues involved and seriously to confuse the jury; and the failure to include the above mentioned request of the appellant in the court's instructions to the jury was prejudicial to the appellant's case.

## II

The appellant complains that the trial judge instructed the jury that they should not go into the realm of conjecture or speculation regarding the *cause* of his alleged injury. He contends .that if the jury were instructed not to engage in conjecture or speculation on any issue in the case, they likewise should have been enjoined in regard to all of the issues. It is apparent that an instruction to that effect would have been entirely proper; but there is no requirement that the trial judge grant such an instruction, provided the charge to the jury, fully and fairly, covers the law and the factual situation of the case. *Ager v. Baltimore Transit Co.,* 213 Md. 414, 425, 426, 132 A. 2d 469. A careful examination of the charge discloses no error in this regard.

## III

The ultimate contention of the appellant is that the trial judge should have granted his request that the jury be instructed that it appeared from the uncontradicted evidence in the case (a) that the appellee was guilty of negligence in the operation of his automobile, and (b) the appellant was free from contributory negligence. Under proper circumstances, prayers of this nature may be granted. *Dunstan v. Bethlehem Steel Co.,* 187 Md. 571, 578, 51 A. 2d 288; *National Hauling Contractors Co. v. Baltimore Transit Co.,* 185 Md. 158, 162, 44 A. 2d 450; *Schwartz v. Price,* 215 Md. 43, 136 A. 2d 749; *Richardson v. Boato,* 207 Md. 301, 306,. 114 A. 2d 49; Md. Rule 552 a.

### (a)

This Court has held that where the factual situation is such as we have in this case, just how much warning the

driver of the front car must give of his intention to stop or slow up, and what precautions the driver of the rear car must take to avoid colliding with a car which stops or slows in front of him, cannot be formulated in any precise rule, but depend upon the facts and circumstances of each case. *Brehm v. Lorenz*, 206 Md. 500, 505, 112 A. 2d 475. In order for the trial court properly to instruct that a defendant in a case such as this has been guilty of negligence as a matter of law, the facts must be undisputed or viewed in a light most favorable to the defendant, and, together with all reasonable and proper inferences to be drawn therefrom, disclose such acts or conduct on the part of the defendant as to show a lack of ordinary care and caution, in regard to which there is no room for ordinary minds to differ. Applying this rule to the facts in this case, we think the appellant has no right to complain that the question of the appellee's negligence was submitted to the jury. According to the appellee, he was proceeding at a slow speed in heavy traffic. He was travelling between a half and a full car's length behind the appellant's car in the middle of the block, when it came to "a sudden stop *without a signal.*"[1] He was not questioned further to determine exactly what he meant by the words "without a signal," so we must consider them (as the jury may have) to mean that there was *no* signal: hand, arm, signal lamp or signal device. We pointed out in *Jones v. Baltimore Transit Co.*, 211 Md. 423, 127 A. 2d 649, the weakness of such adjectival generalizations as "sudden stop," so we give but little weight to that remark. However, under the circumstances surrounding this case, we are unable to say that there is no room for ordinary minds to differ on the question of the appellee's negligence, *vel non,* assuming, as we must for this discussion, that the appellant stopped his car in the middle

---

1. Code (1951), Art. 66½, sec. 193 (c), provides: "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." Sec. 194 says: "The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device * * *."

of the block without any signal.[2]  It is a matter of common knowledge that nearly all automobiles of today have signal devices that light upon the application of the foot-brake. Here, however, we have no testimony upon the subject— whether the appellant's automobile was so equipped, or, if so equipped, whether or not the light was in working order, etc.; consequently, if there were *no* signal, it may have been because the appellant's car was not so equipped or needed repairs.  In either event, due care on the appellant's part would call for the giving of one of the other signals mentioned in the statute, or a showing that there was no "opportunity to give such signal."  Under all of the facts and circumstances of this case, we hold that the submission of appellee's negligence, *vel non,* to the jury afforded the appellant no just ground to complain.

### (b)

What we have just said seems to answer the appellant's contention that he was entitled to an instruction informing the jury that he was free of any contributory negligence.  If there were no evidence of acts or conduct from which a reasonable mind could find or infer negligence on the part of the appellant, it would have been error to have instructed the jury as to contributory negligence unless it were an instruction that the appellant was free of contributory negligence as a matter of law.  *Lindenberg v. Needles,* 203 Md. 8, 14, 97 A. 2d 901.  Viewing the evidence in a light most favorable to the appellee, we are unable to say that a reasonable mind could not find or infer negligence on the part of the appellant; therefore, the submission of the question of contributory negligence to the jury, likewise, affords the appellant no just grounds to complain.

> *Judgment reversed, and case remanded for a new trial, the appellee to pay the costs.*

---

2. We held in *Todd v. Ferrell,* 212 Md. 574, 130 A. 2d 581, that the brake signal light was an adequate compliance with the statutory requirements, under the circumstances of that case.