BALTIMORE TRANSIT COMPANY *v.* PRINZ ET AL.

(Two Appeals in One Record)

[No. 134, September Term, 1957.]

400

*Decided January 22, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John E. Boerner,* with whom was *Patrick A. O'Doherty* on the brief, for the appellant.

*Charles J. Hessian* and *Claude A. Hanley* for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

The two appeals here involved arise out of actions for alleged negligence brought by Ruby Mae Prinz and Floy Kirkpatrick, plaintiffs below and appellees here, against The Baltimore Transit Company, defendant below and appellant in this Court. A rear-end collision occurred between an automobile driven by the appellee, Prinz, in which the appellee, Kirkpatrick, was riding as a passenger, and a bus of the appellant. The cases were tried together before a jury; and, at the conclusion of the appellees' evidence, the trial judge refused to grant a motion for a directed verdict offered by the appellant. The appellant offered no testimony. The jury returned verdicts in favor of both of the appellees, and from the judgments entered upon said verdicts these appeals have been taken.

In determining whether a defendant in this kind of a case was entitled to a directed verdict, we have repeatedly stated that all conflicts in the testimony must be resolved in favor of the plaintiffs and the Court assumes the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiffs' right to recover.

The evidence supports a finding of these facts. On April 9, 1956, at approximately 9:00 p.m., the appellee, Ruby Mae Prinz, was operating her husband's automobile in an easterly direction on Eastern Avenue, a boulevard street, in Baltimore County. She had with her, as a passenger, the other appellee, Mrs. Kirkpatrick. The weather was clear and dry; traffic was very light; and the street was straight in both directions from the scene of the accident and well illuminated. At the point of collision, Eastern Avenue is about seventy

feet wide with a median strip of 18 to 20 inches, dividing east and west bound traffic. Each half of this roadway is of sufficient width to accommodate three lanes of traffic. The southern lane next to the curb is considered as a parking lane, the middle lane as the slow lane, and the one next to the median as the fast lane.

Mrs. Prinz was proceeding in the middle, or slow, lane at a speed between twenty-five and thirty miles per hour, when a dog stepped off the curb about sixty-five feet in front of her, and started to walk across her path. At this time, the bus of the appellant was about fifty to seventy-five feet to her rear, traveling at a speed of thirty to thirty-five miles per hour. When Mrs. Prinz saw the dog step off the curb, she removed her foot from the accelerator and gradually slackened her speed for some thirty to fifty feet. She had "just touched" the brake when there was a heavy and severe impact from the rear, caused by the front of the bus colliding with the rear of the Prinz car. The Prinz car was equipped with brake lights, which were in working condition. It was never brought to a stop before the collision, but its speed had been decelerated to about ten or fifteen miles an hour. The dog was unharmed, being some ten to fifteen feet in front of Mrs. Prinz at the time of the accident. The impact severely damaged the rear and broke the backs of the front seats of the passenger car (it being a type in which the front seats were collapsible so as to be made into a sleeping compartment), and both of the lady occupants were thrown backward, with no further control over the car. The car proceeded one hundred and sixty-two feet, where it was stopped by a stone wall. The operator of the bus informed the officer who investigated the accident that Mrs. Prinz "slowed in front of him and he was unable to stop in time to avoid [the] accident."

I

Under the above circumstances, the appellant first contends that as the evidence fails to establish any negligent act or omission on the part of the operator of the bus which caused the accident, the trial judge erred in refusing to with-

draw the case from the consideration of the jury. It argues that as the mere happening of the rear-end collision is not of itself proof of negligence, the appellees are apparently relying upon such unproven acts as excessive speed, following too closely, and improper control and lookout. We find it only necessary to consider the last: improper control and lookout.

In Maryland, we have adopted the general rule that every automobile driver must exercise toward other travelers upon the highways that degree of care which a person of ordinary prudence would exercise under similar circumstances. It is universally recognized that negligence and reasonable care are relative terms and their application depends upon the situation of the parties and the degree of care and vigilance which circumstances reasonably impose. It is stated in *Stevenson, Law of Negligence in the Atlantic States,* sec. 6, that negligence and reasonable care derive their significance from a factual background, in which there must be evidence of circumstances which support a legitimate inference that in the exercise of reasonable care injury could have been avoided. See also, *Holler v. Lowery,* 175 Md. 149, 158, 200 A. 353; *Schell v. United Railways & Elect. Co.,* 144 Md. 527, 531, 125 A. 158.

We think in the case at bar that the factual background amply supports legitimate inferences by the jury that the operator of the bus did not have his vehicle under reasonable and proper control and/or he failed to maintain a proper lookout. It was not necessary that an eye-witness testify specifically that he saw the operator of the bus looking in another direction in order to establish the fact that he failed to keep a proper lookout, if the facts and circumstances are sufficient to support a rational inference to that effect. Nor was it necessary that a witness specifically testify· that he saw said operator in such a physical position as to lack control of his vehicle, if the surrounding circumstances were such as to form a basis for a rational and intelligent inference that he did fail to have his vehicle under reasonable and proper control. We have held that in situations of this nature just how much warning the driver of the front car

must give of his intention to slow up,[1] and what precautions the driver of the rear car must take to avoid colliding with a car which slows in front of him, cannot be formulated into a precise rule, but depend upon the facts and circumstances of each case, and the questions of negligence and due care are generally left to the jury to decide. *Kantor v. Ash*, 215 Md. 285, 137 A. 2d 661. We do not consider it necessary to repeat all of the facts set forth above. However, it seems obvious to us that Mrs. Prinz did no more than to slacken her speed from twenty-five or thirty miles per hour to that of ten to fifteen miles per hour in a distance of some forty feet. She did not come to a stop. She was in the slow, or middle, lane of three lane traffic going in the same direction that she was moving. There was nothing in the testimony to show that the bus could not have safely passed her on either side. The bus was a large and weighty motor vehicle. In cases arising from collisions, the size and weight of such vehicles are important factors to be considered; and the drivers thereof owe to other motorists the duty to take these elements into consideration in the operation of their vehicles. *York Motor Express Co. v. State*, 195 Md. 525, 532, 74 A. 2d 12. We conclude that the questions of how much warning Mrs. Prinz was required to give of her intention to decelerate her speed, and what precautions the driver of the bus should have taken to have avoided colliding with the car operated by her, were properly submitted to the jury. It was within their province to determine whether an operator of a heavy bus traveling under the conditions mentioned above exercised due care and caution in avoiding the collision; and whether Mrs. Prinz exercised due care and caution, under the circumstances, in the operation of her husband's car, *i. e.*, if her deceleration in speed were "sudden"

---

1. Code (1951), Art. 66½, sec. 193 (c), provides: "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." Sec. 194 says: "The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device * * *."

enough to require a signal under the statute, and, if so, was the signal given by her brake light "appropriate."

## II

The appellant also contends, as a further reason for the granting of its motion for a directed verdict, that the evidence disclosed an emergency situation set in motion by the sudden intrusion of the dog upon the highway, which brings this case within the ruling of *Brehm v. Lorenz*, 206 Md. 500, 506, 112 A. 2d 475. In that case, there was an emergency situation. A cat *ran* out in front of a car in which the plaintiff was riding as a passenger. The car was traveling at about twenty-five miles per hour. The driver applied the brakes quickly, and the vehicle was brought to a sudden stop within five to ten feet. Almost instantaneously, the car was struck in the rear by the defendant's automobile. The trial judge granted a directed verdict for the defendant and this Court affirmed. The facts in that case are easily distinguishable from those in the case at bar. Here, the dog *walked* out. There was no sudden jamming of the brakes or a quick stop, but a gradual deceleration of speed over a much greater length of space than in the *Brehm* case. The facts in that case were properly held to constitute an emergency situation; but we are unable to conclude that the facts of this case warrant a similar ruling.

## III

Finally, the appellant claims that it was entitled to a prayer instructing the jury that the accident was the result of an unavoidable accident, and, therefore their verdicts must be for the defendant. The ground for this contention, an emergency situation, is the same as that named in II, and has, for the main part, been answered. This Court has defined an unavoidable accident as "an inevitable occurrence, not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any manner, by the act or omission of the" defendant. *Washington Turnpike Co. v. Case*, 80 Md. 36, 30 A. 571. An emergency does not necessarily render an ensuing accident unavoidable. *Fogle v. Phillips*, 191 Md. 114, 120, 60 A. 2d 198. But if it did,

406

the facts in this case did not disclose an emergency situation. What has been said above, when considered with the definition of an unavoidable accident, makes it plain that the appellant was not entitled to a ruling that the accident was the result of an unavoidable accident as a matter of law.

*Judgments affirmed, with costs.*