## BERNARDI, ETC. *v.* ROEDEL

[No. 183, September Term, 1960.]

*Decided April 5, 1961.*
*Motion for rehearing or modification of opinion filed April 10, 1961, denied April 12, 1961.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Maurice J. Pressman* and *William C. Holland,* with whom was *H. Lee Brill* on the brief, for the appellant.

*Foster H. Fanseen* and *Delverne A. Dressel* for the appellee.

Sybert, J., delivered the opinion of the Court.

This is an action for personal injuries sustained in a rear-end collision of motor vehicles. Bernardi, the plaintiff-appellant, appeals from a judgment for defendant-appellee Roedel, complaining, in essence, that the trial court committed reversible error by refusing to instruct the jury that appellee was negligent as a matter of law, that such negligence was the sole cause of the accident, and that appellant was not chargeable with any contributory negligence.

The record shows that on the morning of February 21, 1958, described as "sort of hazy", appellant was driving his employer's three-quarter ton stake body truck, with a compressor in tow, in a northerly direction on U. S. Route 103 (Montgomery Road) in Howard County, Maryland. The compressor, mounted on two wheels and attached to the truck by a ball and bracket, extended eight or ten feet to the rear of the truck and had neither lights nor license tag. There was also a quantity of two-inch pipe loaded on the bed of the truck and apparently projecting ten feet to the rear. Montgomery Road is a two-lane highway, about 24 feet wide. There had been a heavy snowfall that week and, although the road appears to have been relatively clear, there were still patches of ice which were covered by drifted snow.

While proceeding, according to his testimony, along a section of the road "straight with a gradual climb", Bernardi observed a snowdrift on the road blocking his lane of traffic. He also saw an automobile coming south in the opposite lane. He said he had ample opportunity to stop—three or four hundred feet—so he began to slow down. When he noted that the car coming in the opposite direction would be at a point which would prevent him from going around the drift until this automobile had passed by it, he "broke to a halt" rather than braking all at once as he approached the drift. Bernardi testified that while stopped completely at the drift, he felt a sudden jarring in the back end of the truck which

caused him to be knocked against the steering wheel, and he allegedly sustained an injury to his back. The impact resulted from the appellee's car colliding with the compressor and pushing it underneath the rear of the truck. Bernardi stated that "the pipes were driven into the cab, and the tank was driven into the seat". He indicated that he had not known prior to the impact that Roedel was following him. It was undisputed that he gave no hand signal.

Roedel testified that he had been following Bernardi's truck for about one to one and a half miles at a distance of two car lengths when "all of a sudden I happened to notice that he is at a dead standstill". He further testified that he did not see Bernardi slow down at all, nor did he observe appellant's stoplights go on. He said that if he had seen lights he would have been able to stop in time. He stated that immediately before the accident happened it appeared to him that Bernardi's truck "was going straight into" the snowdrift. He also said that he first saw the southbound car as it went past him, and that he had not observed it earlier because he was "following straight behind" Bernardi.

This Court has often held that questions of negligence and due care are generally questions for the jury to decide, and unless facts are undisputed and lead to conclusions from which reasonable minds could not differ, negligence as a matter of law cannot be a basis for an instruction to a jury. *Kantor v. Ash,* 215 Md. 285, 137 A. 2d 661 (1958) ; *Baltimore Transit Co. v. Prinz,* 215 Md. 398, 137 A. 2d 700 (1958) ; *Marshall v. Sellers,* 188 Md. 508, 53 A. 2d 5 (1947). Courts will be careful not to usurp the role of the jury where facts are disputed or where fair minds might draw different conclusions. *Howard County v. Leaf,* 177 Md. 82, 94, 8 A. 2d 756, 761 (1939) ; *State v. Carroll-Howard Sup. Co.,* 183 Md. 293, 37 A. 2d 330 (1944). Only in exceptional cases will questions of negligence and contributory negligence pass from the realm of fact to that of law. *Cox v. Pennsylvania R. Co.,* 120 A. 2d 214 (D. C. Ct. Mun. App. 1956).

Analysis of the testimony in this case reveals substantial

conflict in several important areas with respect to which the minds of reasonable men could differ, and therefore the questions raised thereby were properly submitted to the jury for decision. For example, appellant stated that he began decelerating at least three hundred feet from the snowdrift, yet appellee, who had been following appellant's truck for approximately a mile and a half, two car lengths behind, testified that he observed no process of slowing down. The general rule in Maryland is that where motor vehicles are traveling in the same direction there exist duties incumbent upon both drivers. The driver to the rear has a duty to exercise reasonable and ordinary care to avoid injury to the vehicle in front of him. However, the driver in the vehicle ahead also must exercise the same degree of care to avoid injury to the vehicle behind him. And the degree of care incumbent on the driver to the rear to avoid colliding with the vehicle ahead is not susceptible of precise formulation, but must depend on the facts and circumstances of each particular situation. 3 MLE, *Automobiles,* § 129; *Baltimore Transit v. Prinz, supra; Brehm v. Lorenz,* 206 Md. 500, 112 A. 2d 475 (1955). The question of the negligence of the driver to the rear is a question of fact to be determined by the jury, unless no other conclusion than that of negligence can be reached by a rational mind. *Christman v. Weil,* 196 Md. 207, 212, 76 A. 2d 144, 146 (1950). The circumstances presented here do not compel one conclusion only, i. e., that the appellant, as the driver of the front vehicle, was not guilty of any negligence in the bringing of his vehicle to a halt. Consequently that question was for the jury to resolve, and they could have concluded that appellant stopped too suddenly for appellee to avoid the collision.

Article 66½, § 228 (c), Code (1957), states that: "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." Section 229 of the same article provides for signals by hand and arm or by a signal lamp or approved device.

Under the statute, the operator of a vehicle about to stop or suddenly decrease speed must give an appropriate signal unless there was no opportunity to give such signal. *Kantor v. Ash, supra.* Since appellant anticipated stopping three hundred feet before he actually did stop, the jury could have decided that there was ample opportunity to signal. This may be particularly true on an open highway where rapid deceleration and stopping are not expected. Appellant seeks to establish the fact that an appropriate signal was given by use of his stop-lights, which are activated by use of the brakes of his truck. While appellant testified that they were in working order the day before, he failed to show their condition at or after the accident. Appellee stated positively that "if he (appellant) had brake lights and stepped on his brakes, I'm sure I would have seen them." This then became a jury question, and they could have believed that the lights were not working, or if they were, that they were obscured by the compressor in tow, and that their absence or invisibility was a proximate cause of the accident.

Appellant further testified that although he was "looking in my rear-view window", he could not see appellee's car at all. The jury could have found appellant did not exercise due care or they could have given credence to his explanation that appellee's car "might have been on the blind spot which would be crowding the road to the right, which would put him out of view of my side mirror". But if they believed appellant's explanation, this would completely negate appellant's argument that appellee should have seen the approaching southbound car, since from a position on the extreme right side of the road it would have been impossible for appellee to see around the left side of the truck to observe the opposite lane of traffic.

This Court has held that:

". . . if there be any evidence from which a rational conclusion may be drawn as opposed to the theory of the prayer, the weight and value of such evidence should be left for the consideration of the jury, and, before such a prayer can be granted, the

court must assume the truth of all the evidence be-
fore the jury, tending to sustain the claim or defense,
as the case may be, and of all inferences of fact
fairly deducible from it."

*State v. Carroll-Howard Sup. Co.,* 183 Md. 293, 300, 37 A.
2d 330, 334 (1944). See also *Mayor and City Council v. Bas-
sett,* 132 Md. 427, 429, 104 Atl. 39 (1918).

Since the conflicting evidence in this case presented sev-
eral factual instances with respect to which the minds of
reasonable men could differ, the weight and value of such
evidence were properly left for the consideration of the jury.

Having found no error below, we will affirm the judgment.

*Judgment affirmed, appellant to pay
the costs.*