## THE PHILADELPHIA, WILMINGTON & BALTIMORE RAIL ROAD COMPANY *vs.* ROBERT KERR & OTHERS.

RAIL ROAD & STEAMBOAT COMPANIES,—LIABILITIES OF: "ORDINARY CARE AND DILIGENCE:" PRAYERS & INSTRUCTIONS TO THE JURY.—The owners of a loaded canal boat over-run and sunk by the steam ferry boat, Maryland, while the latter was crossing the Susquehanna river, from Perryville to Havre-de-Grace, sued the Phil. Wil. & Balto. R. R. Co., the owner of the steamer, for damages, averring due care on their part, and charging the collision to the negligence of the defendant, who, in its pleas, denied the wrong, and charged the want of care to the plaintiffs. Each offered evidence of want of care on the part of the other.— HELD :

1st. That the rule laid down to the jury by the Court below for their guidance, viz: "that it was the duty of the the defendant to exercise the *utmost care and diligence* which it was in their power to employ, considering the nature of the business in which they were engaged," was too rigorous.

2nd. That the defendant was "required to exercise such reasonable care to avoid injury to the plaintiffs, as ordinary prudence would suggest," that is, "such a degree of care and attention as experience has found reasonable and necessary to prevent injury to others in like cases."

3rd. The expression "ordinary care and diligence" is comparative, and

522 MARYLAND REPORTS.

The Phila. Wil. & Balto. R. R. Co. *vs.* Kerr et al.

always bears a direct relation to the particular circumstances of each case, the increasing probabilities of danger requiring a corresponding increase of care and vigilance to avoid it.

4th. That any failure, by one engaged in the pursuit of his own occupation or business, to observe precautionary rules established by competent authority to guard against accidents and prevent injuries to others, is in legal contemplation, a want of ordinary care.

APPEAL from the Superior Court of Baltimore city.

This was an action by the appellees against the appellant to recover damages for loss and injury sustained by them from a collision caused by the over-running and sinking of a canal boat loaded with lime owned by them, by the steam ferry boat "Maryland," plying between Havre-de-Grace and Perryville, on the Susquehanna river. The plaintiffs, in their declaration, averring due care on their part, charge the collision to negligence and carelessness on the part of the defendant. The defendant, in its pleas, denies the wrong and injury imputed to it, and in turn charges a want of care and diligence upon the plaintiffs, and issue was joined on said pleas.

*Exception.*—At the trial of the cause the captain of the canal boat, (who was one of the plaintiffs,) testified that he left Morgan's wharf, situated on the west side of the Susquehanna River, about five hundred yards north of the wharf of the steamer at Havre-de-Grace, on the morning of the 24th of May, 1862, in clear daylight, bound south; that in about half an hour after the canal boat had got under way, the steamer Maryland, in her course from Perryville to Havre-de-Grace, and when about two hundred and fifty or three hundred yards east of its wharf at Havre-de-Grace, struck the side of the canal boat and stove it in; that he was standing at the helm, in charge of the rudder, that he did not see the Maryland until she was within one hundred yards of the canal boat, that he could not have done anything to get out

APRIL TERM 1866.						523

The Phila. Wil. & Balto. R. R. Co. vs. Kerr et al.

of the way, that the breeze was so light that the canal boat was moving down the river at only about two miles an hour, and that he could not have controlled her by the rudder, and was obliged to let her drift; that he had no idea that the steamer would strike the boat until she did strike, as he considered that it was the business of the steamer to keep clear of the sailing vessel. The witness also stated that he had been in the habit, for ten years, of navigating the Susquehanna near Havre-de-Grace, and that he knew that the steamer was in the habit of crossing the river, with the railroad cars, many times every day, and that he knew her course. He also testified, that from Morgan's wharf, and from the helm of the canal boat, there was a clear, unobstructed view in every direction; that he did not look out for the Maryland; that he never looks out for steamers; that there was no special lookout on the canal boat; that there were two hands on deck, but no notice was given him of the approach of the steamer; that he had two anchors on board, but that he did not throw out either. He further stated, that if an anchor had been thrown out it would have stopped the boat in twenty or thirty feet.

There was proof that the steamer was in her usual track; that her engine was reversed before the collision, although not in time to prevent it; but her motion was then slow. The time occupied by the steamer in passing from wharf to wharf, when the river is unobstructed, was proved to be from six to seven minutes.

It was proved that the steamer crosses the river ordinarily about twenty-four times in a day, carrying trains of passengers and freight cars. Her length is two hundred and thirty-six feet, breadth thirty-six feet, and her engines eight hundred horse power. She has two pilot houses; but the view up the river, from the forward pilot house, when crossing the river from Perryville to Havre-de-Grace, is shut off by the

train of cars on the starboard side of the steamer's upper deck. As soon as the canal boat was seen, the captain of the steamer ordered the engines to be reversed. The captain testified that there was a breeze from the north, quite sufficient to have enabled the canal boat to pass to the stern of the steamer. There was no special lookout on the steamboat, and it was proved, that if a lookout had been stationed at the steamer's bow, he could have seen whatever was in the river, up to Morgan's wharf.

*Mr. Moore,* a mariner, said, that the canal boat could easily have gone round the stern of the steamer, and that he always avoided the steamer, and that, in .his opinion, a man of ordinary prudence, when in command of a sailing vessel there, would keep a constant watch for the steamer, and that in this case, if there was not sufficient breeze to propel the canal boat, the captain should have dropped his anchor, which would have prevented the collision.

The plaintiffs and defendant each offered three prayers, all of which were rejected ; and the Court gave an instruction, laying down to the jury two rules for their guidance :

1. That it was the duty of the defendant to exercise the utmost care and diligence, which it was in its power to employ, considering the nature of the business in which it was engaged.

2. That if the injury to the canal boat could have been prevented by the exercise of such care and diligence on the part of the defendant, in the use and management of the steamboat, then the plaintiffs are entitled to recover, unless the jury shall find that the accident could have been avoided by the exercise of ordinary care and diligence on the part of those in charge of the canal boat.

To the instructions given by the Court, the defendant excepted, and the verdict and judgment being for the plaintiffs, appealed to this Court.

The cause was argued before BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Wm. Schley* and *Thos. Donaldson,* for the appellant:

1. In an action on the case to recover damages at law, for injuries caused by a collision, the plaintiff cannot recover, if his own negligence contributed, in any degree, to produce the collision. He must establish two propositions of fact, firstly, that there was want of due care on the part of the defendant; and no want of care on the part of the plaintiff. The *onus* as to both facts, is on the plaintiff. *Vanderplanck vs. Miller,* 1 *M. & M.,* 169, 22 *Eng. C. L. Rep.,* 280. *Pluckwell vs. Wilson,* 5 *Carr & Payne,* 375, 24 *Eng. C. L. Rep.,* 368. *Turley vs. Thomas,* 8 *Carr & Payne,* 103, 34 *Eng. C. L. Rep.,* 312. *Woolf vs. Beard,* 8 *Carr & Payne,* 373, 34 *Eng. C. L. Rep.,* 435. *Thorogood vs. Bryan,* and *Cullin vs. Hills,* 8 *Man. Gr. & Scott,* 114, 65 *Eng. C. L. Rep.,* 114. *Hawkins vs. Cooper,* 8 *Carr & Payne,* 473, 34 *Eng. C. L. Rep.,* 485. *Sells vs. Brown,* 9 *Carr & Payne,* 601, 38 *Eng. C. L. Rep.,* 245. *Smith vs. Smith,* 2 *Pick.,* 621. *Irwin vs. Sprigg,* 6 *Gill,* 200. *Lane vs. Crombie,* 12 *Pick.,* 177. *Owings vs. Jones,* 9 *Md. Rep.,* 108. *Harlow vs. Hamiston,* 6 *Cow.,* 191. 3 *Am. Law Reg.,* 565, ( *N. S.*)

2. In the navigation of the Susquehanna river at Havre-de-Grace, by a canal boat, passing over the known and accustomed track of the steamer Maryland, the captain of the canal boat ( having knowledge of the fact that said steamer was accustomed to pass from wharf to wharf, many times during every day, and that she was a large and powerful steamer, and that, from the absence of a sufficient breeze, he had no control of the canal boat, but was obliged to let her drift ) was bound to exercise more than ordinary care and diligence. The defendant's prayers, it is true, presented the hypothesis of want of ordinary care on the part of the plain-

tiffs, in any material respect; but it was in connection with the proposition that the defendant was only bound to ordinary care. The instruction makes a wide distinction. Whilst holding the defendant to the utmost care possible, it limits the duty of the plaintiffs to mere ordinary care.

The counsel for the appellant maintain, that under the circumstances, the plaintiffs were under the same obligation of care and diligence as was the defendant. The ordinary rules of navigation, on the high seas, have no controlling application to this steamboat engaged in the special service of passing on a prescribed route, from wharf to wharf. *Steves vs. The Oswego & S. R. R. Co.*, 18 *N. Y.*, 422. *Wilds vs. Hudson R. R. Co.*, 2 *Amer. Law Reg.*, *N. S.*, 422. *Wright vs. Malden*, *R. R. Co.*, 4 *Allen's Rep.*, 283. *Balto. & Susq. R. R. Co. vs. Woodruff*, 4 *Md. Rep.*, 242.

But not only did the instruction thus discriminate in the required degree of care, but practically shifted the *onus* from the plaintiffs upon the defendant. The plaintiffs were not required to prove affirmatively that there was no want of care on the part of the canal boat; but the instruction, as given, cast upon the defendant the burden of establishing that there was want of ordinary care on the part of the plaintiffs. *Harlow vs. Hamiston*, 6 *Cow.*, 191. *Lane vs. Crombie*, 12 *Pick.*, 177, cited and adopted in *Irwin vs. Sprigg*, 6 *Gill*, 206. 35 *Md. Rep.*, 422. 23 *Conn. Rep.*, 439.

4. The rules properly applicable in cases of bailment, to carriers of passengers, carriers of freight, &c., and the rules of the Admiralty Court properly applicable in cases of collision on the high seas, ought not to be applicable in the present case. This is an action at law, the steamer a ferry boat travelling on a prescribed route, from wharf to wharf, not engaged in ordinary navigation, nor having the option to select her route. Nor should the canal boat be regarded as a vessel lying at her moorings in a harbor would be re-

garded, when struck by a steamer entering the harbor. The canal boat was here in motion, and those in charge of her had notice of the danger, and voluntarily encountered it.

*Henry Stockbridge,* for the appellee:

There is but a single question presented to this Court for its adjudication, viz., what degree of care is it incumbent upon those to exercise who have charge of a steamboat like the "Maryland," plying with great velocity across the track of slow moving craft, whose only motive power is the sluggish current and the uncertain wind?

Cases involving this question have often been before the Courts both of admiralty and common law jurisdiction, and the principles governing them are the same in both.

The only distinction between the rule of common law and that of admiralty, on the question of care and negligence in cases of collision, is, that at common law, the party complaining cannot recover if it appear that he in any wise contributed to his own loss.

The Courts, in passing upon these cases, have sometimes been unfortunate in their use of language, and spoken of care and negligence as slight, ordinary, extraordinary and gross. The meaning of these terms "is not fixed or capable of being so," (16 *Howard Rep.*, 474,) since the *"ordinary care"* of one person would be most gross and culpable negligence on the part of another. No Court, for example, would permit a heavy, powerful and swift steamer to traverse a crowded channel with the "ordinary care" and vigilance which it would require of a dug-out or rowboat in the same locality. And no more does any Court permit a steamer, "traversing waters where sailing vessels are often met with," to proceed with the *ordinary* lookout and caution employed and exercised by the same steamer upon the high seas. *Genesee Chief vs. Fitzhugh,* 12 *How.,* 463. *Culbertson vs. Shaw,* 18 *How.,* 587.

In this last case the Supreme Court, from the locality of the vessels alone, required "the *utmost* vigilance."

But the other elements which, equally with locality, make the utmost care imperative upon those whom those elements surround, are set forth in other cases adjudicated by the same Court.

In the *P. & R. R. Co. vs. Derby*, 14 *How.*, 486, 487, it is laid down, that *any* negligence on the part of persons entrusted with the management of the "powerful but dangerous agency of steam," is "gross" negligence, and "public policy and safety require that they be held to the *greatest possible care and diligence.*"

The same Court expressly re-affirms this doctrine as applicable to. steamboats as well as locomotives, in 16 *Howard*, 474, 476, *Steamboat New World vs. King*, and declares it to rest, "not only on public policy, but on sound principles of law."

. It is true, that in both these cases the rights and injuries of a passenger, a gratuitous passenger, constituted the case before the Court; but surely "public policy" views all persons alike, and requires no more caution against injuring those on board the craft that does the injury, than those pursuing their lawful business on thronged thoroughfares or public waters. In neither of the cases did the Court base its decision upon the fact that it was a passenger that was injured; in neither was there any relation springing from a contract, express or implied, and upheld by an adequate consideration; yet, from the single fact that the agency of steam was employed, the U. S. Supreme Court held the parties employing that agency, in both cases, "to the greatest possible care and diligence."

In *St. John vs. Paine*, 10 *How.*, 583, the Court lay down with great care the rules governing steamers in their approach to sailing vessels, and though they do not use the terms, "utmost care," "greatest possible care and diligence,"

which they have used elsewhere, they make it the imperative "duty of the steamer to adopt such precautions as will prevent a collision." See, also, *Steamer Oregon vs. Rocca*, 18 *How.*, 572, 573. *Culbertson vs. Shaw*, 18 *How.*, 587. *Newton vs. Stebbins*, 10 *How.*, 606. 1 *Parsons' Maritime Law*, 201. *Kelsey vs. Barney*, 2 *Kernan*, 429. *The Rose*, 2 *Wm. Rob.*, 3.

Absolutely effective care or caution is required. This, if not the utmost possible, is the utmost necessary care. In *Liverpool Steamship Co. vs. Randall*, 21 *How.*, 383, the Court not only review and affirm the foregoing decisions, making it obligatory upon sailing vessels to keep on their course when approaching steamers, and upon the steamers to use whatever care is necessary to prevent collision, but show that the degree of care which a steamer is bound to exercise, increases with the increase of the liability to collision, culminates with the crisis of the peril, and ceases only when the occasion for its exercise has passed, or the means of avoiding injury have been exhausted.

In the case now before the Court, no element was wanting which tended to increase the amount of caution which the law required the defendant to exercise.

COCHRAN, J., delivered the opinion of this Court.

The opinion recently delivered by this Court in the case of *The Balto. & Ohio R. R. Co. vs. Breinig*, applies to, and practically decides, the main point raised by these exceptions. The jury here, as in that case, were instructed by the Court that "it was the duty of the defendant—now appellant—to exercise the utmost care and dilligence which it was in their power to employ, considering the nature of the business in which they were engaged." Had the case been one of injury to a passenger while in course of transportation by the cars or boat of the appellant, this instruction would have

been appropriate, for in that class of cases the carrier, as was said in *Balto. & Ohio R. R. Co. vs. Worthington*, is bound to exercise the highest possible degree of care in all things affecting the safety of the passenger. This case, however, is a different one. The effort is to recover damages resulting from a collision of the appellant's steamboat with a canal boat belonging to the appellees, and by which the canal boat and cargo were totally lost. The canal boat had started from her berth and was on her way, under a light wind, down the Susquehanna river, and while holding her course, was struck by the steamer Maryland and sunk. The steamer belonged to the appellant and was used in transporting its engines, cars and passengers across the Susquehanna between Perryville and Havre-de-Grace. Both boats were on a common highway, engaged in avocations wholly independent of each other, and without any relation of contract or trust upon which any special duty from either to the other could be predicated, each was in the pursuit of a lawful business, and their relations were in all respects precisely like those disclosed in *Breinig's* case. Under these circumstances the appellant, as was said in the case referred to, was not subject to a rule so rigorous as this instruction prescribes, but "was required to exercise such reasonable care to avoid injury to the appellees as ordinary prudence would suggest," that is, "such a degree of care and attention as experience has found reasonable and necessary to prevent injury to others in like cases." This is what is understood by the terms "ordinary care and diligence." It should not be forgotten, however, that these terms are comparative, and always bear a direct relation to the particular circumstances of each case. The increasing probabilities of danger require a corresponding increase of care and vigilance to avoid it. "The degree of vigilance which the law exacts, by the requirement of ordinary care, must vary with the probable consequences of negligence,

APRIL TERM 1866. 531

The Phila. Wil. & Balto. R. R. Co. *vs.* Kerr et al

and also with the command of means, to avoid injuring others, possessed by the person on whom the obligation is imposed. Under some circumstances a very high degree of vigilance is demanded by the requirement of ordinary care. Where the consequence of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury upon others are completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight." *Kelsey vs. Barney*, 2 *Kern.*, 425. And it may be said, in general, that any failure by one engaged in the pursuit of his own occupation or business, to observe precautionary rules or regulations established by competent authority, to guard against accidents and prevent injuries to others, is in legal contemplation, a want of ordinary care. It matters not whether the business be prosecuted on land, on the water, or upon both, the established rules for regulating the course of conduct on either, so far as they relate to the safety of others, should be duly regarded to satisfy the first requirement of ordinary care.

It follows from the views expressed that the appellees' first and second prayers were properly rejected. They required of the appellant a degree of care and dilligence not warranted by the nature of the case, and in that respect their rejection was proper.

The 1st and 2d prayers of the appellant, we think, were also defective. They are too general and fail altogether to direct the attention of the jury to important facts which it was proper for them to consider in passing on the question of negligence. It is unnecessary to refer to the evidence contained in the bill of exceptions further than to say that it sustains this objection to those prayers. In our opinion there was no error in rejecting them. The judgment will be reversed and a procedendo awarded.

*Judgment reversed, and*

*procedendo awarded.*

(Decided July 19th, 1866.)