JEFFREY NESBITT, Infant, etc. et al. *v.* BETHESDA COUNTRY CLUB, INC. et al.

[No. 415, September Term, 1973.]

*Decided February 15, 1974.*

The cause was argued before MOYLAN, GILBERT and LOWE, JJ.

*S. Allan Adelman*, with whom was *Rourke J. Sheehan* on the brief, for appellants.

*Leonard L. Lipshultz*, with whom were *Richard M. Schwartz, Lipshultz & Hone* and *Bruce N. Goldberg* on the brief, for appellee Jaime Maderas. Submitted on brief by *George W. Shaffer*, with whom were *Carr, Bonner, O'Connell, Kaplan, Thompson & Diuguid* for other appellee.

LOWE, J., delivered the opinion of the Court.

In a humorous treatise on "Golf in the Middle Ages" Judge Cornelius P. Mundy said, "Golf, like art, is a goddess whom we woo in early youth if we would win her." This appeal comes to us as the result of an injury occasioned while two youths, fifteen years of age were attempting such courtship.

Appellant Jeffrey Nesbitt was casually employed by appellee James Folks, a golf professional at Bethesda Country Club which is also an appellee. Appellee Jaime Maderas was a full time handyman employed by Folks. Maderas was required to be present daily from dawn 'til dusk. When his services were not needed he was permitted

to use certain facilities for his recreation. On June 4, 1972, he was permitted to use the golf driving range. He was given the key since the range was not open at that time. Appellant, who as a caddy had received training in golf safety, asked Maderas if he could join him on the practice range. Maderas consented, albeit somewhat reluctantly. Noticing that appellant was "shanking" the ball, Maderas offered to teach him a grip to overcome that fault. Maderas first demonstrated the proper grip by taking several practice swings; he further demonstrated it by striking a ball. His back swing fractured the left frontal bone of appellant's forehead.

Maderas testified that he stated, "Watch out, I'm going to hit the ball," about thirty seconds before he did so. Appellant denies hearing this warning.

The case was tried in the Circuit Court for Montgomery County before a jury presided over by Judge Walter Moorman. He directed a verdict for appellees James Folks and Bethesda Country Club at the end of appellant's case, holding, as a matter of law, that Maderas was not acting within the scope of his employment. After appellee Maderas concluded his case, the jury returned a verdict in his favor.

Appellant raises four questions on appeal.

1.

"Did the Court err in granting a directed verdict in favor of appellee James Folks on the ground that the appellee Jaime Maderas was not acting within the scope of his employment?"

In light of the jury's verdict for appellee Maderas, there is no finding of negligence for which Folks can be held accountable as employer. The question of scope of employment becomes moot unless we find reversible error at the trial level. We find no such error.

2.

"Were the appellants prejudiced by the Court's erroneous direction of verdict and subsequent remarks to the jury?"

Appellant argues an entirely new concept for the first time. In addition to alleging Folks' "vicarious liability," appellant asserts the question of whether the golf professional is liable for the injuries suffered by appellant because of any direct negligence on his part. He seems to say that a golf professional *might* have some duty a) to determine the training and ability of those who use a golf practice driving range and b) to supervise the range whenever an employee is given special permission to use it.

If such a duty exists appellant shoulders the burden of proving its existence or at the very least of asserting it below. He must also establish the standard of supervision. Appellant did not do that. Nor did he assert or argue below any theory of direct negligence, unrelated to the scope of employment question. Appellant cannot now be heard to propound a theory not heretofore asserted or proposed. "This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court; . . . ." Md. Rule 1085.

By appending himself to an objection of appellee Maderas, appellant did preserve as an issue the court's explanation to the jury upon directing the verdict in favor of appellees Folks and Country Club.

> "MR. LIPSCHULTZ: I object to Your Honor having instructed this jury in such detail as to why you directed a verdict on behalf of Bethesda Country Club and the golf pro. I believe that Your Honor's instructions in such a fashion as Your Honor did, unfortunately was prejudicial to the young defendant."
> "MR. ROSENBERG: I take my exception to that portion of the instruction too, Your Honor. I think it prejudiced the plaintiff, too."

During his preliminary instructions, Judge Moorman explained to the jury in a clear and simple way that the Bethesda Country Club and the golf professional were no longer defendants and thus not proper subjects of their consideration. He explained that he had found as a matter of

law that defendant Maderas was not acting within the "scope of his employment," and, by example, demonstrated what that phrase meant.

We cannot condemn the court for doing so. To permit a jury to hear the defense and observe the participation of several parties during a two day trial, then suddenly advise them that two of the three defendants are no longer before them, without explanation, not only raises questions as to the judicial process in the minds of the jurors, but confuses them as to their responsibilities and prerogatives as well. This is not to say that an explanation, improperly handled, could not be prejudicial. We find in this instance, however, that the matter was well handled and, in context, added clarity to the responsibilities of the jury. Parenthetically, it is interesting that both appellee Maderas and appellant felt equally prejudiced by' the explanation. While the fact that both took exception does not conclusively prove the absence of prejudice, it gives some indication of the impartial balance maintained by the court.

In any case, its explanation of the directed verdicts followed the court's clear admonition that no express opinion on the facts by the judge should be considered; nor inference taken from rulings or instructions, tone of voice, grimaces or gesture of the court. Any suggestion of an opinion "gleaned from or alluded to" in instructions, the court directed should be disregarded.

We find no prejudice in the explanation.

### 3. and 4.

The appellant attempts to raise the following additional questions on appeal:

"3. Were the Court's instructions to the jury on the issues of contributory negligence, assumption of risk, keeping a proper lookout and proximate cause incorrect and misleading?

4. Was the cumulative effect of the Court's remarks and instructions prejudicial to the appellants?"

Question number three runs the gamut of the substantive instructions given by Judge Moorman. To answer it we would have to sieve through the instructions looking for a faulty grain. Question four simply narrows the mesh of the sieve to catch anything appellant overlooked in question three.

If these questions had been properly presented as objections to the instructions before the jury retired, they would still have been far too broad to conform to the requirements of Md. Rule 554 e. An objection must distinctly state the portion of the charge to which the objection is made, and a general objection, without specification as to the particular parts will not suffice. *Maszczenski v. Myers*, 212 Md. 346, 356. In *Morris v. Peace*, 14 Md. App. 681, 687, we reviewed this objection to instructions: "Of course, we take exception to the instruction, the contributory negligence instruction stated before. We take exception to Instruction No. 29, dealing with negligence per se." We held there that the objection did not conform to the rule, saying, "Obviously the reference to the contributory negligence instruction is insufficient for us to rule on it . . . . Neither does the reference to the subject matter of Instruction No. 29 make clear the basis of the objection. We therefore, have no authority to consider any objections to the instructions under Md. Rule 554 e."

The rule demands clarity and particularization both in the assignment of error and the reasons therefore. It reads:

> "Upon appeal a party in assigning error in the instructions, shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the grounds of objection distinctly stated at the time, *and no other errors or assignments of error in the instructions shall be considered by the appellate court.*" (Emphasis added.)

Except for the "me too" exception appended to appellee

Maderas' objection discussed previously, the only objection taken by appellant reads as follows:

"MR. ROSENBERG: I object to the instruction on the sports instruction. One, you call voluntary association in a sport, because I don't think this was that type of a sport.

THE COURT: The exception is noted.

MR. ROSENBERG: This was not. I object to the instruction on the game of golf because this was not a game of golf."

We are limited then to appellant's objections upon the "voluntary association in a sport . . . " because it was not "that type of sport" and "to the instruction on the game of golf because this was not a game of golf."

Some imagination might permit us to assume that appellant's initial objection relates to assumption of risk and that his reason for the objection is that golf is not the type of sport where there is a risk to be assumed. If appellant's apparent assertion is that the doctrine of assumption of risk applies only to certain sports, he is in error. "A voluntary participant in any lawful game, sport or contest, in legal contemplation by the fact of his participation, assumes all risks incidental to the game, sport or contest which are obvious and foreseeable." 4 Am. Jur. 2d, § 98; see also *Hawayek v. Simmons*, (La. App.), 91 So. 2d 49, 53, 61 A.L.R.2d 1254.

The second half of his exception objects to the instruction on the game of golf "because this was not a game of golf." We assume he perceives a distinction between a competitive game under way on a fairway and a practice session on a driving range. We find little merit in the distinction when we consider the numerous risks inherent in driving practice which is designed to enhance a golfer's competitive performance.[1]

---

1. It has been recognized that the risk of golfing accidents can be assumed on a driving range. *See*, for example, Katz v. Gow, 321 Mass. 666, 75 N.E.2d 438, 439, holding that the plaintiff assumed the risk of being hit in the eye by another golfer on a driving range.

Indeed, the risks seem greater on a driving range than on a fairway by virtue of the golfers' increased proximity to each other. On a fairway participants are seldom within club striking distance of each other and they approach each "shot" sequentially. On a driving range the participants are closer together and they follow no recognized order in their drives. While each participant stands in his own designated area, each area is but a short distance from the others. The possibility of being struck with a club, either held or inadvertently released, is enhanced by that proximity. The very purpose of practice on a driving range is to increase one's ability to strike the ball more forcefully while retaining accuracy.

We have gone as far as a liberal interpretation of Rule 554 e will permit us in responding to appellant's complaints. By virtue of having to surmise, and interpret the objection, we may well have gone beyond our scope of review. In criminal matters we are permitted to ". . . take cognizance of and correct any plain error in the instructions, material to the rights of the accused even though such error was not objected to as provided. . . ." Md. Rule 756 g. Such discretion is not applicable in civil matters. In spite of expanding our authority to imaginative lengths of interpretation, we find no reversible error — properly assigned.

*Judgments affirmed; costs to be paid by appellant.*