ALYCE M. JOHNSON ET AL. *v.* COUNTY ARENA, INC. ET AL.

[No. 405, September Term, 1975.]

*Decided January 6, 1976.*

The cause was argued before MOORE, LOWE and MELVIN, JJ.

*Harry W. Goldberg* for appellants.

*John A. Buchanan,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellees.

Lowe, J., delivered the opinion of the Court.

This appeal arises from a wrongful death action in the Circuit Court for Prince George's County, brought on behalf of Ava Johnson, a sixteen year old girl who died as the result of an injury received from a roller skating accident. Ava and four girlfriends had gone to the roller skating rink owned by appellees, County Arena, Inc. and America on Wheels, Inc. Being a novice skater, Ava skated slowly with her friends close to the outer railing of the oval track, avoiding the area near the middle of the rink where fast skaters usually skated. Several "skating guards" were employed by the rink to assist skaters and maintain order. Testimony was elicited from witnesses that immediately before the incident causing Ava's injury the guards were "playing tag, as they often did." One of these guards struck Ava from behind knocking her down, fell on top of her and caused a "pile up." According to the testimony of one of the girls who was skating close to Ava:

> "one of the guards came and he came real fast and
> he was big and he knocked her down and he ran
> into her."

Ava's leg was broken. Shortly after her leg had been set and placed in a cast, she died.

At the conclusion of appellants'[1] case, appellees moved for a directed verdict on the grounds that there had been no showing of primary negligence and that, even if there was evidence sufficient to generate a jury question as to negligence, the decedent had assumed the risk causing her injury.

## Primary Negligence

The appropriate procedure for determining whether a

---

[1]. Appellants are the parents individually, and one as personal representative of the estate of Ava Johnson.

motion for directed verdict should be granted in cases where negligence is in issue is to assume to be true all facts most favorable to the party against whom the motion is made and to draw all favorable inferences fairly deducible therefrom. If such facts and inferences are such that reasonable minds could differ as to whether the party had been negligent, the motion for directed verdict must be denied. *Buchanan v. Galliher and Harless,* 11 Md. App. 83, 87. Repeated use and rephrasing of this standard may cause a court to lose sight of how little evidence of negligence is necessary to provide a jury question. This general standard for determining whether to grant a directed verdict was elucidated in *Fowler v. Smith,* 240 Md. 240, 246:

> "Negligence is a relative term and must be decided upon the facts of each particular case. Ordinarily it is a question of fact to be determined by the jury, and before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn. *Kantor v. Ash,* 215 Md. 285. Cf. *Suman v. Hoffman,* 221 Md. 302. *And Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury.* The rule has been stated as requiring submission if there be any evidence, however slight, legally sufficient as tending to prove negligence, and the weight and value of such evidence will be left to the jury. *Ford v. Bradford,* 213 Md. 534. Cf. *Bernardi v. Roedel,* 225 Md. 17, 21." (Emphasis added in part).

Appellants showed that the decedent was proceeding slowly and carefully in a slow traffic lane and was struck with such force by a speeding skating guard that she fell to the ground under him and suffered a broken leg. The ordinary care owed to her by appellees through their guard

was something greater than that which would constitute ordinary care expected of another patron of the rink. The guard who collided with Ava was a man approximately 25 years old and was hired to prevent just the type of accident which he caused. Testimony showed that he was hired by appellees to "... assist skaters ... assist beginners.... keep the composure of the rink .... keep the conduct. That is, that it is maintained orderly."

Upon considering what evidence of negligence is sufficient to constitute a jury question, the standard of ordinary care imposed upon appellees is measured by that which should be exercised by a reasonable skating guard of the age, experience and responsibility of the perpetrator of the injury. *Cf. Lemons v. Chicken Processors*, 223 Md. 362, 367-368.

> "Negligence has been defined as 'any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for the protection of others against unreasonable risk of harm.' *A. L. Inst. Restatement of Torts*, sec. 282. Complementing that statement, this should be read:
>
> 'This actor should recognize that his conduct involves a risk of causing an invasion of another's interest, if a person,
>
> '(a) possessing such perception of the surrounding circumstances as a reasonable man would have, or such superior perception as the actor himself has, and
>
> '(b) possessing such knowledge of other pertinent matters as a reasonable man would have or such superior knowledge as the actor himself has, and
>
> '(c) correlating such perception and knowledge with reasonable intelligence and judgment would infer that the act creates an appreciable chance of causing such invasion.'

It does not exist apart from the facts and circumstances upon which it is predicated. *Baltimore, C. & A. R. Co. v. Turner*, 152 Md. 216, 228, 136 A. 609; *Dickey v. Hochschild, Kohn & Co.*, 157 Md. 448, 450, 146 A. 282; *Schell v. United Rys. & El. Co.*, 144 Md. 527, 531, 125 A. 158. It necessarily involves the breach of some duty owed by the defendant to the plaintiff (*Philadelphia, W. & B. R. Co. v. Kerr*, 25 Md. 521, 45 C. J., 632), and is inconsistent with the exercise of ordinary care. 45 C. J. 624 *et seq.* 'Ordinary care' is also relative, and varies with the nature of the facts and circumstances to which the term is applied. (*Dickey v. Hochschild, Kohn & Co., supra; Merrifield v. C. Hoffberger Co.*, 147 Md. 134, 127 A. 500) and the degree of vigilance and circumspection required to constitute ordinary care must be proportioned to the harm which may result from the failure of a tort-feasor to so order his conduct and the operation of agencies under his control as to avoid injury to others. *Ibid.*" *Holler v. Lowery*, 175 Md. 149, 157-158.

It was more pointedly held in *The Phila. Wil. & Balto. R. R. Co. v. Kerr*, 25 Md. 521, 530-531, that a failure by one engaged in the pursuit of his own occupation or business, to observe precautionary rules established by competent authority to guard against accidents and prevent injuries to others, is in legal contemplation, a want of ordinary care.

Not only has the Court of Appeals held that the duty owed by one engaged in the pursuit of his business is dependent upon the relation or circumstance in which the respective parties find themselves, *Lemons, supra,* it also has held that the amount of care constituting due or ordinary care varies with the nature of the undertaking. *Martin G. Imbach, Inc. v. Tate*, 203 Md. 348, 358.

"Negligence is essentially relative and is predicated upon the existence of given facts which impose the duty of so acting in respect to such facts as not to

> inflict injury upon another which could be avoided by the exercise of that degree of care and prudence which persons of ordinary judgment and prudence may reasonably be expected to exercise under the same conditions." *Id.* at 359.

The "standard" of ordinary care never varies; however, what action or precaution is required is dependent upon the then circumstances, *Christ v. Wempe,* 219 Md. 627, 640. Those circumstances may include the superior ability and experience of an actor and a failure to observe precautionary rules established in pursuit of the actor's occupation or business. The ordinary care of a mature skating guard is not the same as the ordinary care of a sub-teenage novice.

In the instant case, the ordinary care arising from the circumstance of the relationship of the parties, *i.e.,* a guard in the conduct of his business, and one whom he is hired to protect, imposes a greater quantum of care upon the guard and his employer than had that relationship not existed. Thus, the evidence of the guard's recklessness sufficiently raised a question of whether he had exercised the amount of care and prudence in the performance of his duties commensurate with his relationship to Ava, to require submission of the issue of negligence to the jury.

### Assumption of the Risk

In ascertaining whether the decedent assumed the risk of the accident to which she was subjected, the relationship of the parties must again be considered. We are not called upon to determine whether the risk of being knocked down by a negligent patron of the rink was assumed by the decedent. It seems most clear to us that she did not assume the risk of being struck from behind by the negligent conduct of a guard hired to avert such accidents. It is that factual distinction which the trial judge overlooked in citing *Nesbitt v. Bethesda Country Club,* 20 Md. App. 226 as his reason for directing a verdict on appellees' behalf.

In explaining his decision to the jury, the trial judge said:

> "We concluded that the testimony of the young

ladies who have testified here showed that there wasn't really any showing of negligence on the part of this fellow who was skating around. He went into this girl. He came up from behind. But there has been a showing that she had taken her hand off the rail as a result of the skater there coming by. There was definite testimony that she was a novice skater. And this is the real reason which we get into, that is, a person assumes a risk, and we were presented a case, Nesbitt versus Bethesda Country Club, where a person was hit in the face with a golf club as a golfer swung back and it went to the Court of [Special] Appeals.

The Court of [Special] Appeals went into a great discussion of 'Anyone who engages in any sport assumes the risk,' and so forth.

There may be an attendant there when a person puts on wheels and starts to roller skate and they go in a crowded floor and they leave a place of safety and they go into a place of possible harm and injury. And this is what happened here. You take that chance. Football players, baseball players, basketball players, out attending a baseball game and somebody gets hit with a ball from the bat of one of the players, it is part of the game, so to speak. It is one of those things in Maryland that if you assume a risk or are contributorily negligent in the slightest degree, that precludes you from recovery."

The "great discussion" in *Nesbitt* was the following paragraph:

"Some imagination might permit us to assume that appellant's initial objection relates to assumption of risk and that his reason for the objection is that golf is not the type of sport where there is a risk to be assumed. If appellant's apparent assertion is that the doctrine of assumption of risk applies only to certain sports, he

682

is in error. 'A voluntary participant in any lawful game, sport or contest, in legal contemplation by the fact of his participation, *assumes all risks incidental to the game, sport or contest which are obvious and foreseeable.*' 4 Am.Jur.2d, § 98; see also *Hawayek v. Simmons*, (La. App.), 91 So. 2d 49, 53, 61 A.L.R.2d 1254." *Nesbitt*, 20 Md. App. at 232. (Emphasis added).

It will be noted that great care was taken in framing the controlling sentence in *Nesbitt* to emphasize the qualification to the general application of the doctrine of assumption of risk to all sports. We think it clear that the only risks assumed are those incident to the sport and even those are limited to those incidental risks that are "obvious and foreseeable." Surely being knocked down from behind by a guard hired to assist you is not so obvious and foreseeable a risk, as to be an incident of skating at a commercial rink.

*Bull Steamship Lines v. Fisher*, 196 Md. 519, is a landmark case on the doctrine of assumption of risk. Although that case does not deal with a sport or game, it clearly lays down the same qualifications which we attached to an application of the doctrine in *Nesbitt*. In *Bull*, at 526, the Court of Appeals explained:

" . . . that every risk is not necessarily assumed by one who works in a dangerous place or at a dangerous occupation. He assumes only those risks which might reasonably be expected to exist, and, if by some action of the defendant, *an unusual danger arises, that is not so assumed. Where there is a dispute whether the risk is assumed or not, that question is usually left to the jury.*" (Emphasis added).

Our review of the record discloses sufficient evidence of negligence by the employee of appellees, not foreseen by appellant, to constitute a jury question.

*Judgment reversed.*
*Case remanded for new trial.*
*Costs to be paid by appellees.*