**Jason G. MILLER**

v.

**UNITED STATES of America**

**No. CIV. S–01–597.**

United States District Court, D. Maryland.

March 18, 2004.

Thomas Jay Althauser, Eccleston and Wolf PC, Baltimore, MD, for Plaintiff.

Larry D. Adams, Paul Edwin Soeffing, Stephen M. Schenning, Thomas M. DiBiagio, Office of the United States Attorney, Baltimore, MD, for Defendant.

## MEMORANDUM AND ORDER

GAUVEY, United States Magistrate Judge.

This is a Federal Tort Claims Act case, in which a participant in a staged wrestling event at the Aberdeen Proving Ground is suing, pursuant to the substantive law of Maryland, to recover damages for a serious injury he sustained during that event. This case was tried on January 13–14, 2003. Pursuant to FED.R.CIV.P. 52, the Court makes the following findings of fact and conclusions of law.

### I. The Federal Tort Claims Act and Choice of Law

The Federal Tort Claims Act provides a limited waiver of the United States' sovereignty to suits in tort. 28 U.S.C. § 1346(b), 2671 et seq. See also United States v. Orleans, 425 U.S. 807, 813, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

Pursuant to this act, federal courts have exclusive jurisdiction over claims for money damages for negligence of employees of the United States, acting within the scope of their employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

■ Since the negligent act or omission is alleged to have occurred in Maryland, Maryland law governs the United States' liability in this case. See, e.g., Richards v. United States, 369 U.S. 1, 8–9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), aff'd, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Maryland follows the lex loci delicti choice of law rule in tort cases, which requires a tort action to be governed by the substantive law of the state where the wrong occurred. In re: Sabin Oral Polio Vaccine Prod. Liab. Litig., 774 F.Supp. 952, 954 (D.Md. 1991), aff'd, 984 F.2d 124 (4th Cir.1993).

### II. Negligence

#### A. Burden and Standard of Proof

■ In Maryland, a plaintiff must establish the elements of negligence by a preponderance of the evidence. Baltimore & O.R.R. v. Plews, 262 Md. 442, 278 A.2d 287 (1971).

#### B. The Elements of Negligence

■ The Plaintiff must show: (1) that a duty was owed by Defendant United States to Plaintiff Jason G. Miller; and (2) that Defendant breached that duty; and (3) that Defendant's breach was the proximate cause of the injuries sustained by Plaintiff. Myers v. Montgomery Ward & Co., 253 Md. 282, 252 A.2d 855 (1969); W.B. Bradley, Inc. v. N.H. Yates & Co., 218 Md. 263, 268, 146 A.2d 433 (1958); Keitz v. Nat'l Paving & Contracting Co., 214 Md. 479, 134 A.2d 296 (1957).

#### C. Premises Liability & the Duty Owed by the Landowner

The responsibility of those who own or possess property to people injured on their property depends upon the standard of care owed to the injured person. The standard of care depends upon the injured person's status on the property. Maryland Civil Pattern Jury Instructions, 24:1 (4th ed.2002). See also Baltimore Gas & Elec. Co. v. Flippo, 348 Md. 680, 705 A.2d 1144 (1998), aff'd, 348 Md. 680, 705 A.2d 1144 (1998).

■ An invitee is a person who is invited or permitted to be on another's property for purposes related to the owner's or occupier's business. MPJI–Cv 24:2. See also Baltimore Gas & Elec. Co. v. Flippo, 348 Md. 680, 705 A.2d 1144 (1998).

The defendant conceded that plaintiff was an invitee under the mutual benefit doctrine. The Court agrees and so finds that plaintiff, as a member of the group

calling itself the Semi–Professional Wrestling Federation, was invited to put on a show for the dependent children of Aberdeen Proving Ground in exchange for the opportunity to use the facility and perform for an audience. Therefore, the Court concludes that plaintiff was an invitee under the mutual benefit doctrine. *Howard County Bd. of Educ. v. Cheyne*, 99 Md. App. 150, 636 A.2d 22 (1994).

■■ The owner owes invitees a duty to exercise reasonable and ordinary care to protect against known or should be known dangers. *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 517 A.2d 1122 (1986). Moreover, this duty extends to conditions caused by other persons where a reasonable person would anticipate the occurrence and its probable result. *Eyerly v. Baker*, 168 Md. 599, 178 A. 691 (1935); *Dalmo Sales of Wheaton, Inc. v. Steinberg*, 43 Md.App. 659, 407 A.2d 339 (1979).

■ Mr. Kegley was the sports specialist of Youth Center facility at the Aberdeen Proving Ground at the time of the accident. It is not disputed that he was acting within the scope of his employment when he approved the use of the Youth Center facility for a staged wrestling performance for the entertainment of the Aberdeen Proving Ground community. Mr. Kegley had twelve years of experience in similar jobs, holds a bachelor's degree in physical education, and had completed a sports director's course at the time of plaintiff's injury. Mr. Kegley was the custodian of the mats used for the activity during which plaintiff was injured. Mr. Kegley testified that he allowed Mr. Green, the organizer of the show, to use the mats. He testified that Mr. Green knew that they were gymnastic mats, but had looked at them and said they were fine. Mr. Kegley was familiar with the nature of the wrestling event, having observed two events put on by plaintiff's group prior to the one in which plaintiff was injured. Mr. Kegley acknowledged that the activity that occurred during the match at which plaintiff was injured was substantially similar to that which took place at the two events Mr. Kegley had previously observed and that he was fully aware of the tendency of the mats to shift and separate during the wrestlers' activities. Therefore, the Court concludes that Mr. Kegley had a duty to use reasonable and ordinary care to protect Mr. Miller against known dangers when he agreed that the wrestling event could be held in the Youth Center, using youth center equipment, for the benefit of the Aberdeen Proving Ground community. That duty included providing safe and suitable equipment, particularly where, as here, he knew the nature of the activity and indeed admitted to observing the shifting and separating of the mats. A reasonable sports specialist in Mr. Kegley's position should have anticipated that one of the participants could lose his footing and cause injury to either himself or another participant as a result of the use of the inappropriate mats that the youth center provided to the Semi–Professional Wrestling Federation.

■ Defendant argued that plaintiff's co-wrestlers, pursuant to an alleged agreement between Mr. Kegley and Mr. Green, were to stand at each corner of the "ring" and ensure that the mats did not separate, but the Court finds that there was no such agreement. While Mr. Kegley testified to such an arrangement, neither Mr. Miller nor Mr. Green remembered such an agreement. Additionally, the video of the subject event did not reflect such monitoring of the four corners of the mats. Furthermore, even if there had been such an agreement, the Court concludes that defendant would remain liable for any failure on the part of plaintiff's co-wrestlers to exercise reasonable care to keep the mats safe. *Eyerly v. Baker*, 168 Md. 599, 178 A.

691 (1935); *Dalmo Sales of Wheaton, Inc. v. Steinberg*, 43 Md.App. 659, 407 A.2d 339 (1979). While defendant was free to delegate performance of its duty owed to an invitee, defendant cannot thereby avoid or delegate the risk of nonperformance of its duty. *Rowley v. Mayor & City Council of Baltimore*, 305 Md. 456, 466, 505 A.2d 494 (1986), *aff'd*, 305 Md. 456, 505 A.2d 494 (1986). Therefore, the Court concludes that defendant owed a duty to plaintiff-invitee to ensure that the equipment used for the event during which plaintiff was injured was reasonably safe.

### D. The "Good Samaritan" Doctrine (Alternate Source of Duty)

(1) RESTATEMENT (SECOND) OF TORTS § 323 provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

*Id.*

(2) RESTATEMENT (SECOND) OF TORTS § 324A also provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Id.*

While Maryland appellate courts have not explicitly adopted these two sections of the Restatement, case law holds that they are recognized as part of Maryland law. *See, e.g., Heinrich v. Goodyear Tire & Rubber Co.*, 532 F.Supp. 1348, 1353 (D.Md. 1982) (§ 323); *E.G. Rock, Inc. v. Danly*, 98 Md.App. 411, 423, 633 A.2d 485 (1993) (§ 324A).

The Court finds that Mr. Kegley, on behalf of defendant, expressly undertook to provide mats for the activity at which plaintiff was injured. The Court also finds that his failure to exercise reasonable care, that is, to provide appropriate mats that did not shift and separate during the activity, increased the risk that the wrestlers might lose their footing and thus cause or sustain injury. Therefore, the Court concludes that Section 324A of the Restatement provides an independent, and alternative, source of the duty owed by defendant to plaintiff. *E.G. Rock, Inc. v. Danly*, 98 Md.App. 411, 423, 633 A.2d 485 (1993).

### E. Breach of the Duty Owed

The Court finds that the mats provided by defendant for the activity at which plaintiff was injured were inadequate, in particular because their tendency to shift and separate during the activity adversely affected the footing and balance of the wrestlers. The Court bases its finding on: (1) the testimony of Dr. Borkow-

ski, plaintiff's expert in sports safety, that the mats provided by defendant were completely inadequate for the activity he observed on the video of the accident because, as gymnastics mats, they were not suited to be tied or pushed together, and failed to provide adequate footing for the wrestlers; (2) the testimony of Ms. Rachel Ashby, a Safety and Occupational Health Specialist who investigated the accident on behalf of Aberdeen Proving Ground, that the mats provided were inadequate for the activity performed; and (3) the Court's observation of the activity depicted on the video introduced at trial and the tendency of the mats to shift and separate during that activity.

Indeed, the gymnastic mats themselves carry a cautionary warning, including: "Before using, KNOW YOUR OWN LIMITATIONS and the limitations of this mat." However, the Court finds that Mr. Kegley, on behalf of defendant, made no effort to investigate what type of mats or other equipment were appropriate for either the activity described to him by Mr. Green, or for the activity that he observed on the two occasions that preceded plaintiff's injury.

Thus, the Court concludes defendant breached its duty to plaintiff-invitee to ensure that the equipment used for the event during which plaintiff was injured was reasonably safe. *Keitz v. Nat'l Paving & Contracting Co.*, 214 Md. 479, 134 A.2d 296 (1957).

### F. The Proximate Cause Rule

The rule in Maryland as to proximate cause, as set forth by the Court of Appeals, states:

> [t]o constitute actionable negligence, there must be not only casual connection between the negligence complained of

and the injury suffered, but the connection must be by a natural and unbroken sequence,— without intervening efficient causes,— so that, but for the negligence of the defendants, the injury would not have occurred. It must not only be a cause, but it must be the proximate cause.

*State, for Use of Kalives v. Baltimore Eye, Ear, & Throat Hosp., Inc.*, 177 Md. 517, 527, 10 A.2d 612, 616 (1940).

■■■ The Court finds that the mats provided by defendant shifted and slipped beneath Mr. Workman's feet in such a way as to cause him to lose his balance and fall on plaintiff, thus seriously injuring his back. The Court bases its finding on: (1) the testimony of Dr. Borkowski, plaintiff's expert in sports safety, that after watching the video approximately 100 times, he had concluded that plaintiff's opponent, Mr. Workman, was unable to brace his feet properly due to the inadequate mats, which caused him to lose his balance and fall on plaintiff; (2) the Court's conclusion, based upon its observation of the video, that because one of Mr. Workman's feet was on the floor as the result of the separation of the mats, while his other foot was placed on a mat that was sliding across the floor, that he lost his balance and thus fell on plaintiff; and (3) plaintiff's testimony that Mr. Workman told him he had slipped and was sorry plaintiff had been hurt.[1]

The Court therefore concludes that "but for" the unreasonable risk posed by the inadequate mats provided by defendant plaintiff would not have been injured. *State, for Use of Kalives v. Baltimore Eye, Ear, & Throat Hosp., Inc.*, 177 Md. 517, 527, 10 A.2d 612, 616 (1940). Plaintiff has thus proven his claim of negligence against the defendant.

---

**1.** The Court notes that while this testimony was hearsay, defendant did not object, and thus waived the objection.

## III. *Defenses*

### A. Contributory Negligence

 A plaintiff cannot recover if the plaintiff's negligence is a cause of the injury. The defendant has the burden of proving by a preponderance of the evidence that the plaintiff's negligence was a cause of the plaintiff's injury. Contributory negligence occurs when the injured party acts or fails to act in a manner consistent with the knowledge or appreciation, actual or implied, of the danger or injury involved. *Campbell v. Montgomery County Bd. of Educ.*, 73 Md.App. 54, 533 A.2d 9 (1987).

 Testimony was introduced at trial that plaintiff's opponent in the match in which he was injured was much larger, and that the two did not rehearse their moves in advance, but rather communicated them verbally during the course of the match. While the Court finds this testimony credible, it is, by itself, insufficient to establish that plaintiff was contributorily negligent.

First, the Court finds that the evidence introduced of the weight differential between plaintiff and his opponent does not establish by a preponderance that the so-called mis-match between plaintiff and Mr. Workman was a cause of plaintiff's injury. Second, the Court finds that Mr. Green's testimony that there may have been a mis-communication that caused Mr. Workman to improperly anticipate plaintiff's counter-move, implying this to be the cause of plaintiff's injury, is speculative and inconclusive. Mr. Miller testified that Mr. Workman told him of the move he was going to make, but that something went wrong. Thus, the Court finds that defendant's theory that plaintiff's lack of rehearsal caused the accident is not supported by the evidence. Again, based on the evidence discussed *supra*, the Court concluded that the proximate cause of the injury was Mr. Workman's fall due to the instability of the mats. Therefore, the Court concludes that defendant has not met its burden by a preponderance, and thus plaintiff was not contributorily negligent. *Campbell v. Montgomery County Bd. of Educ.*, 73 Md.App. 54, 533 A.2d 9 (1987).

### B. Assumption of Risk

 A plaintiff cannot recover if the plaintiff has assumed the risk of the injury. However, the defense of assumption of risk is difficult to prove. "The doctrine of assumption of risk will not be applied unless the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff." *Kasten Constr. Co. v. Evans*, 260 Md. 536, 544, 273 A.2d 90 (1971); *accord* RESTATEMENT (SECOND) OF TORTS, § 496C at 569–574 ("Except as stated in Subsection 2, a plaintiff who *fully* understands a risk of harm to himself ... caused by the defendant's conduct or by the condition of the defendant's land or chattels, and who nevertheless voluntarily chooses to enter or remain ... under circumstances that manifest his willingness to accept it, is not entitled to recover for harm *within that risk*.") (emphasis added). *See also* RESTATEMENT (SECOND) OF TORTS, § 496A, cmt. d at 562.

Moreover, for assumption of risk to relieve another party of liability the injured person must have "voluntarily assumed a known risk *which* risk resulted in the injury of which he complains." *McClearn v. Southeast Concrete Co.*, 253 Md. 135, 138, 251 A.2d 896 (1969) (emphasis added).

Plaintiff testified that he was not aware the mats were separating at times during the match at which he was injured, as he was concentrating on executing the moves inherent to the event. Plaintiff also testified that he did not observe the mats separating on the prior occasion at Aber-

deen Proving Ground where he refereed another match using the same mats. Additionally, plaintiff testified that he never participated in any discussions with Mr. Green about which mats should or would be used during matches. Plaintiff's mother, Ms. Carol Ann Miller, testified that plaintiff never expressed any safety concerns about the activity or matches at issue. Finally, plaintiff testified that he played no role in setting up the mats for the match at which he was injured.

■ The Court finds this testimony credible, and thus concludes that plaintiff did not appreciate that the tendency of the mats to separate posed a dangerous condition in that it might adversely affect the footing of plaintiff's opponent as they executed their wrestling moves.

■ The defendant argues correctly that Mr. Miller did assume the risks inherent in the sport or activity of staged wrestling. However, the only risks assumed by a voluntary participant in a game, sport, or contest are those incidental to the activity, and even those are limited to those incidental risks that are obvious and foreseeable. *Johnson v. County Arena, Inc.* 29 Md.App. 674, 682, 349 A.2d 643 (1976). Mr. Miller did not assume the risk of ill-suited and dangerous equipment. It cannot be said that Mr. Miller fully knew and understood the risk. However, it is a risk that should have been known—if not obvious—to Mr. Kegley with his education, experience and position with the Youth Center. The Court finds that the fact that the mats were inadequate for the activity and prone to separate is not a risk inherent to the activity engaged in by plaintiff. *Id.* This equipment was not properly designed nor properly suited for the activity that the defendant knew was to take place, as Ms. Ashby's report and testimony make clear. Having concluded as a matter of fact that Mr. Workman's slip and fall on Mr. Miller was caused by the separation

and shifting of the mats, and having further concluded that as a matter of law Mr. Miller did not assume the risk of defendant's provision of ill-suited (and dangerous) equipment for the activity, the defense of assumption of risk is unavailing.

## C. The Alleged Liability Waiver

■ Waiver is an affirmative defense, and must ordinarily be specially pleaded or it is waived. FED.R.CIV.P. 8(c). However, "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." FED.R. CIV.P. 15(c). Absent a showing of prejudice, a defendant does not waive an affirmative defense if it is raised at a pragmatically sufficient time. *See, e.g., Cornell v. Council of Unit Owners Hawaiian Village Condominiums, Inc.,* 983 F.Supp. 640 (D.Md.1997).

Although the defendant failed to plead waiver as an affirmative defense, in either its answer to the complaint or in the pretrial order, plaintiff did not object at trial to defendant's exploration of whether plaintiff may have signed a liability waiver. Additionally, it is clear from the record that plaintiff had some notice of defendant's intent to pursue this issue, as demonstrated by defendant's assertion in its motion for summary judgment that plaintiff had signed a liability waiver (Paper No. 6, at 2) and plaintiff's subsequent affidavit denying that he had ever signed such a document (Paper No. 9, Exhibit 1 at 3). Finally, plaintiff testified at trial, in rebuttal to the testimony of defense witnesses, that he never signed any liability waiver forms. Therefore, the Court finds that as plaintiff did not object, and furthermore had both notice and an opportunity to present evidence rebutting defendant's waiver defense, plaintiff has suffered no prejudice. Thus, the Court, in accordance

with FED.R.CIV.P. 15(c), treats the defense of waiver as if it had been properly raised in the pleadings.

Defendant presented evidence at trial that plaintiff may have signed a liability waiver form. Mr. Kegley, the sports specialist at the Youth Center at Aberdeen Proving Ground at the time of plaintiff's injury, testified that he agreed with Mr. Green, the leader of the Semi–Professional Wrestling Federation, that the members of that group would sign liability waivers prior to their events. Ms. Isaac, a Youth Center employee at the time of plaintiff's accident, testified that everyone in plaintiff's group must have signed liability waivers or they would not have been allowed to perform, but she could not remember plaintiff specifically. Ms. Isaac further testified that it was the normal practice of the Youth Center supervisor to retain such waivers. Mr. Green testified that the members of his group would not have been able to perform unless they had first signed liability waivers, and that everyone in his group had signed such forms, although he could not specifically recall plaintiff doing so.

Plaintiff testified unequivocally that he was never given, and that he never signed, a liability waiver form. The Court notes that no document purporting to be such a waiver of liability signed by plaintiff was entered into evidence. The Court finds the testimonial evidence that plaintiff, as distinguished from the other members of his group, may have signed a waiver of liability vague and inconclusive. Defense witnesses apparently could not recall whether plaintiff, as opposed to members of the group generally, actually signed such a document. Additionally, the Court finds plaintiff's testimony that he did not sign such a waiver credible. Most importantly, no such waiver is extant.

Therefore, the Court concludes that there is insufficient evidence to conclude that plaintiff waived liability prior to his injury at Aberdeen Proving Ground. *See Seigneur v. Nat'l Fitness Inst., Inc.,* 132 Md.App. 271, 752 A.2d 631 (2000) (stating that an exculpatory clause is sufficient to insulate a defendant from its own negligence only if its language clearly and specifically indicates the intent to release the defendant from liability for personal injury caused by the defendant's negligence).

## IV. *Damages*

The plaintiff introduced a report of Dr. Robert D. Keehn in which the doctor opines that plaintiff's back injury and bladder function problems are directly related and proximately caused by the subject wrestling accident. Similarly, the plaintiff introduced a report of Dr. Bruce Smoller indicating that the plaintiff suffers from psychological symptoms as a result of his back injury and bladder function problems. Defendant did not rebut these reports and opinions therein and the Court adopts them as credible. Moreover, the parties stipulated that the medical treatment that Mr. Miller received was causally connected to the injuries that he sustained in the subject wrestling event and that the medical bills incurred for that treatment and totaling $64,335.86 are fair and reasonable.

The Court finds that plaintiff, as a result of defendant's negligence, has incurred $64,335.86 in medical bills which are fair and reasonable and suffered significant injuries—a "burst vertebra"—and pain and suffering and emotional trauma. He underwent required serious back surgery, including a bone graft. He was in University of Maryland's Cowley Shock Trauma Unit for a week. Mr. Miller spent three weeks in Kernan Rehabilitation Hospital where he underwent a course of substantial physical therapy. After the accident, he was paralyzed; after the surgery, he had to learn to walk again. He suf-

**614**

fered temporary impairments: for approximately four and one half months his ability to walk was significantly impaired; he was required to self-catheterize himself four to five times per day for approximately seven months; and he sustained episodic loss of bowel control for approximately four and one half years following the accident. He also suffered permanent impairments: he cannot run; is unable to participate in athletic activities; is restricted as to the amount of weight he can lift; and sustained permanent loss of some sensation in his feet and the ability to stand on his toes. He also complains about pain and discomfort when sleeping and when on his feet a long time. Mr. Miller is a young man (he was in his teens at the time of the accident) and accordingly will have these permanent impairments for the rest of his life. The Court awards $64,335.86 for past medical bills and $250,000 for past and future non-economic damages.

Mr. Miller is a fortunate young man. The outcome of this accident could have been far worse. The Court was shocked at the Youth Center's sponsorship of such a wrestling event, and appalled by the casual attitude that Mr. Kegley exhibited toward his role and responsibility for the event and the ensuing accident. The Court concurs with Dr. Borkowski's judgment that this was an inappropriate activity for young people, such as the military dependents at Aberdeen Proving Ground, to observe.